**J. B. OSGOOD COFFEE CO.**

v.

**SMITH et al.**

No. 22009.

Kansas City Court of Appeals.

Missouri.

Feb. 1, 1954.

J. B. Beavers, Cameron, for appellant.

Frank L. Pulley, Cameron, for respondents.

BROADDUS, Judge.

This is an action on an account for the recovery of $272. It was instituted in the Magistrate Court by plaintiff J. B. Osgood Coffee Company, against the defendants, Clarence E. Smith, Martha A. Smith, William L. Patterson and Lavinia A. Patterson. In the Magistrate Court plaintiff dismissed as to defendant Clarence E. Smith, Martha A. Smith defaulted and judgment went against William L. and Lavinia A. Patterson. The Pattersons appealed to the Circuit Court. The trial there to the court, a jury having been waived, resulted in a judgment in favor of defendants Patterson. Plaintiff appealed to this court.

The "Ocean to Ocean Cafe" is a restaurant located on the first floor of the New Cameron Hotel in Cameron, Missouri. The Hotel was owned and operated by the defendants Patterson. Prior to February 1, 1952, the Cafe had been owned and operated by Mr. O. B. Mullis. During the time Mr. Mullis ran the Cafe he had purchased all of his coffee supplies from plaintiff. On February 1, 1952, Mr. Mullis sold the Cafe to Mr. and Mrs. Patterson.

The chief witness for plaintiff was Edwin C. Holland, its route salesman. He testified that when informed by Mr. Mullis that he had sold the restaurant to the Pattersons he (Holland) went to see Mr. Patterson. The latter was in his office in the Hotel and with him was defendant Martha A. Smith. Holland testified: "I introduced myself to Mr. Patterson and told him who I was and what I was there for and I understood that he had bought the restaurant from Mr. Mullis. He said, 'That's right, I did buy it from Mr. Mullis.' He said 'I am going to run it. Here is the young lady who is going to run the restaurant for me.' I turned around and said, 'Well, that's fine,' and walked over and introduced myself to Mrs. Smith, and decided to ask her what she wanted and needed and so forth, like we always did." Holland further testified that relying upon what defendant Patterson told him he made deliveries of coffee to the restaurant.

Plaintiff also introduced in evidence the deposition of defendant, Martha A. Smith. She testified that on February 1, 1952, she

purchased the Cafe from Mr. Patterson and agreed to pay him $200 per month "until I had paid $3000, at which time he would give me a bill of sale." And, "he told me not to tell anyone that I was buying the restaurant until my $3000 was paid in, until I got the bill of sale. He told me to act as his manager;" that Mr. Patterson instructed her to advise all salesmen that she was the manager only, which she did.

Mrs. Smith operated the Cafe for some months and became a bankrupt. She purchased coffee from plaintiff at different times. She paid for a number of orders, but failed to pay for the last five amounting to $272.

Mr. Patterson denied that he had ever operated the restaurant. He testified that he purchased it from Mr. Mullis, but did not buy it from the latter until he had made arrangements to sell it to Mrs. Smith. He offered in evidence a 5-year lease, dated February 1, 1952, from himself and wife to Mrs. Smith covering the restaurant. He also introduced the contract to purchase the restaurant equipment executed by Mrs. Smith on the same date.

Mr. Patterson denied that he ever told any one that he was the owner of the restaurant. He denied that he ever told or suggested to Mrs. Smith that she hold herself out as manager of the cafe for him; denied that at anytime he told Mr. Holland that Mrs. Smith was going to run the restaurant for him.

Defendants Patterson also offered as a witness Mrs. Mary Virginia Wiggins. Mrs. Wiggins had been employed at the cafe for a number of years prior to 1952. She testified that when Mrs. Smith took the restaurant over "she asked me if I would stay with the Cafe," and "she said, 'I am to be the owner and proprietor of the Ocean to Ocean Cafe.'"

Two other employees of the Cafe Mrs. Dollie Stubblefield and Mrs. Bernice Bradford, testified to the same effect for defendants.

Plaintiff contends that under all the evidence in the case the defendants Patterson led plaintiff to believe that they were the owners of the restaurant. It relies upon the settled rule that where a person, by his acts or conduct, has knowingly caused or permitted another to appear as his agent to the injury of a third person, who has dealt with the apparent agent in good faith and in the exercise of reasonable prudence, he will afterwards be estopped to deny the agency when the third person seeks to hold him to account.

We have set forth the testimony and it shows that the issue was sharply drawn. The learned trial judge said in a memorandum opinion filed after he had taken the cause under advisement: "Probably the evidence here would justify submission to the jury on the question as to Agency by Estoppel. However, I find against plaintiff on the facts as to defendants William L. and Lavinia A. Patterson."

Under Section 510.310 RSMo 1949, V.A.M.S., while we may review all the evidence and the law in a jury-waived case, such as this, we are enjoined therein that "The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The trial court saw the witnesses on the stand, observed their demeanor and had every opportunity to pass upon the weight to be given their testimony. It is evident that the trial court's finding was largely based upon its judgment of the credibility of the witnesses. Under the record we refer to the finding of the trial court and cannot find that the judgment is "clearly erroneous" in any respect.

The judgment is affirmed.

All concur.