**S.L. TUBBS, Appellant,**

v.

**Larry DELK, Respondent.**

No. 20936.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 4, 1996.

Randall S. Anglen, Branson, for appellant.

Raymond I. Plaster, Springfield, for respondent.

CROW, Presiding Judge.

The two-count first amended petition of Plaintiff, S.L. Tubbs, against Defendant, Larry Delk, was tried by the court without a jury. At the start of trial, Plaintiff characterized Count I as an "assault charge" and Count II as a "trespass to chattels count" involving a camera.

In a judgment unadorned with findings of fact or conclusions of law, the trial court found for Defendant on both counts. Plaintiff appeals.

Plaintiff's sole point relied on avers the denial of recovery on Count II "was against the weight of the evidence." Inasmuch as Plaintiff assigns no error regarding the denial of recovery on Count I, the portion of the judgment adjudicating that count is final. *State of Missouri, Department of Labor and Industrial Relations, Division of Labor Standards v. Board of Public Utilities of City of Springfield,* 910 S.W.2d 737, 744 n. 5 (Mo.App. S.D.1995).

Where a trial court makes no findings of fact, all fact issues are considered as having been found in accordance with the result reached. Rule 73.01(a)(3), Missouri Rules of Civil Procedure (1996); *Reed v. Reberry,* 883 S.W.2d 59, 61[1] (Mo.App. S.D.1994); *In re Marriage of Swofford,* 837 S.W.2d 560, 563[7] (Mo.App. S.D.1992). As a corollary, an appellate court assumes the trial court believed the testimony consistent with its judgment. *Matthews v. Moore,* 911 S.W.2d 664, 668[3] (Mo.App. S.D.1995); *In re Marriage of Dempster,* 809 S.W.2d 450, 456 (Mo.App. S.D. 1991). Consequently, the appellate court accepts as true the evidence and inferences from it favorable to the judgment and disregards contrary evidence. *T.B.G. v. C.A. G.,* 772 S.W.2d 653, 654[2] (Mo. banc 1989).

So viewed, the evidence establishes that on July 30, 1993, Entertainment Ventures, Incorporated ("EVI"), was a lessee of commercial space in a mall in Branson owned by Defendant. We infer from Plaintiff's testimony that he had an interest in EVI.[1] At that time, EVI was in bankruptcy.[2]

That morning (July 30), Plaintiff arrived at the mall and saw the door to EVI's leased premises "locked with a big chain and a lock." Shortly thereafter, Clay Delk, Defendant's son, arrived with keys and "walked up to the door to unlock it." Plaintiff, equipped with a camera, began taking photographs.

Defendant, who had learned Plaintiff was "in the mall with a camera," went to the scene. Defendant took the camera from

1. Plaintiff's brief tells us—without citation to the record—that Plaintiff was "majority shareholder."

2. Plaintiff testified the bankruptcy began as a "Chapter 11," but was "converted to Chapter 7 ... a day or two before" July 30, 1993.

Plaintiff and told him: "Come down to my office and we'll talk about this."

Plaintiff went to Defendant's office. Defendant returned the camera to Plaintiff in "less than five minutes." The camera was unharmed.[3]

■  Although Plaintiff denominated Count II at trial (and in his notice of appeal) as a claim for trespass to a chattel, his brief identifies it as a claim for conversion.  A suing party who loses at trial may not, on appeal, rely on a different theory than he presented to the trial court.  *Matthews*, 911 S.W.2d at 669[6]; *Kiener v. Powell*, 865 S.W.2d 864, 867[6] (Mo.App. S.D.1993).  However, as explained *infra*, the distinction between the theories enumerated in the first sentence of this paragraph is immaterial in this appeal.

Plaintiff cites no Missouri case in which a party sought recovery for trespass to a chattel.  All four cases cited by Plaintiff are suits for conversion.

The only Missouri case we find where a plaintiff went to trial on a claim for trespass to a chattel is *Pope v. Cordell*, 47 Mo. 251 (1871), an engrossing tale about an itinerant horse and mule ultimately commandeered by Confederate soldiers.  That case teaches: "[T]o constitute trespass there must be a disturbance of plaintiff's possession, which, in the case of personal property, may be done by an actual taking, a physical seizing or taking hold of the goods, removing them from their owner, or by exercising a control or authority over them inconsistent with their owner's possession." *Id.* at 252.

The distinction between a trespass to a chattel and conversion of a chattel is revealed in 87 C.J.S. *Trespass* § 3 (1954):

"Aside from the fact that conversion relates to personalty only, while trespass relates to both personalty and realty, the courts have recognized other differences.  Conversion is usually characterized by a wrongful exercise of dominion and ownership over personalty inconsistent with, and in denial of, the rights of the owner.  Often the only wrong consists in a refusal to surrender a possession which was originally rightful, but the right to which has terminated.  In trespass, on the other hand, there is always an unlawful taking...." (Footnotes omitted.)

It thus appears that Defendant's conduct in the instant case constituted conversion of Plaintiff's camera as well as trespass to Plaintiff's camera.[4]  Defendant does not argue otherwise.

However, Defendant maintains there was substantial evidence to support the affirma-

---

3. Evidently, so was the film.  At trial, Plaintiff identified two photographs of the door, chained and locked.  The photographs have not been filed with us.

4. One may wonder why so trivial an incident has reached this court.  The answer is found in the evidence and Plaintiff's brief.  Plaintiff presented proof that Defendant's net worth exceeds six million dollars and Defendant's 1994 adjusted gross income was $392,000.  Plaintiff's brief says: "Since there has been a technical conversion, and no actual monetary damages were shown, nominal damages should have been awarded.  Delk, (worth $6 million) also acted with legal malice and punitive damages should have been awarded to Tubbs."  In support of that hypothesis, Plaintiff cites *Jackson v. Engert*, 453 S.W.2d 615, 617[2] (Mo.App.1970), which says: "Where a conversion is established plaintiff is entitled to ... actual damages, is entitled at least to nominal damages ... and may recover punitive damages if the conversion is malicious."

One may also wonder whether the principle *de minimis non curat lex* precludes recovery by Plaintiff.  In 86 C.J.S. *Torts* § 22 (1954) we find:

"Although damage is an essential element of tort, a fundamental distinction is to be observed between two classes of torts, one composed of legal wrongs in themselves constituting invasions of right and thus giving rise to legal damage, the other of breaches of duty not necessarily violative of legal rights and with which some actual express damage must concur in order to establish the violation of right essential to tort.  In the former class, damage flows from the wrongful act, itself injurious to another's right, although no perceptible loss or harm accrues therefrom; in the latter, however, some specific actual damage is a condition precedent to the tort.  As to the former class of cases, the maxim, De minimis non curat lex, has no application." (Footnotes omitted.)

We suspect from the above explanation that the *de minimis* rule does not apply to Plaintiff's claim for trespass to his camera.  However, as shall become evident *infra*, we need not decide that question, as there is another basis for affirming the judgment.

tive defense recognized in the following passage from Restatement (Second) of Torts § 260(1) (1965):

> "[O]ne is privileged to commit an act which would otherwise be a trespass to a chattel or a conversion if the act is, or is reasonably believed to be, necessary to protect the actor's land or chattels or his possession of them, and the harm inflicted is not unreasonable as compared with the harm threatened."

That defense is also recognized in 87 C.J.S. *Trespass* § 35 (1954), which reads:

> "An act of trespass may be justified where it is in reasonable defense of property or for the purpose of escaping bodily injury."

The evidence on which Defendant relies in support of the above defense includes the following excerpts from his testimony:

> "I wanted to get [Plaintiff] out of the mall so there wouldn't be any kind of altercation in front of the patrons in the mall and other tenants in the mall.
>
> I think [Plaintiff's] intent was there this morning to start removing stuff from [the leased premises], and there was a question of who it belonged to.
>
> We didn't know if it was the bankruptcy estate or mine as a mall lien holder or [Plaintiff's] as an individual.
>
> [W]hen I knew [Plaintiff] down there [in Memphis], he'd told me his business was in a high-crime area and he kept a gun in his car all the time, and ... he'd just lost his lease, and I didn't know what might happen out in that mall. That's the reason I wanted to get him out of the mall, away from my other tenants, away from the customers, into my office.
>
> My son was there taking the lock off the door, and ... I was [concerned about his safety]."

We infer the trial court found for Defendant on the ground that the seizure of Plaintiff's camera was privileged, as it was a reasonable act to protect Defendant's son, Defendant's mall, Defendant's tenants, and the business invitees in the mall from potential harm by Plaintiff. Obviously, the outcome of this appeal hinges on whether the evidence favorable to Defendant is sufficient to support such a finding.

Defendant's explanation for his concern about potential harm by Plaintiff included Defendant's awareness that Plaintiff had reported he kept a gun, Plaintiff had lost the lease as a result of EVI's bankruptcy, and Plaintiff may have intended to remove items to which the trustee in bankruptcy was entitled. In Defendant's words, "I didn't know what might happen out in that mall ... [so] I wanted to get him out of the mall ... into my office."

To achieve that objective, Defendant took Plaintiff's camera, anticipating Plaintiff would then heed Defendant's invitation to come to the office and discuss the matter. As we have seen, Plaintiff did so, and the situation was defused. There was no violence, no damage to Plaintiff's camera, and he had it back within five minutes.

We hold the evidence is sufficient to support a finding by the trial court that Defendant reasonably believed it was necessary to take Plaintiff's camera to induce Plaintiff to leave the scene of the dispute and go to Defendant's office, thereby protecting the mall, its tenants, its business invitees, and Defendant's son from potential harm by Plaintiff. We further hold that inasmuch as Defendant inflicted no damage on Plaintiff's camera and surrendered it within five minutes, Defendant's exercise of dominion over the camera was not unreasonable as compared with the harm Defendant feared from Plaintiff.

Plaintiff's claim of error is denied, and the judgment is affirmed.

MONTGOMERY, C.J., and PARRISH, J., concur.