**STATE of Missouri, Respondent,**

v.

**Olegario DELACRUZ, Defendant,**

**and**

**A. Aaron's Bonding Company, a Missouri corporation, Surety/Appellant.**

**No. 22030.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 8, 1998.

Mark L. Richardson, Richardson & Richardson, Poplar Bluff, for Surety/Appellant.

Stephen P. Sokoloff, Pros. Atty., Dunklin County, Kennett, for Respondent.

CROW, Judge.

Olegario Delacruz ("Delacruz"), an accused in a criminal case, was released from jail on a $20,000 bail bond. He failed to appear in the trial court on the appointed date. The trial court declared a forfeiture of the bond and, after an evidentiary hearing, entered judgment against the surety for $20,000.

The surety—A. Aaron's Bonding Company ("AABC")—appeals. Its sole point relied on avers the judgment against it was erroneously entered because "the evidence clearly establishes that no agency, actual or apparent, existed between [AABC] and Ray Callanan, the person who executed the bond."

■ The facts set forth in this opinion are gathered from the record, the parties' briefs,[1] and certain findings by the trial court unchallenged by AABC.

AABC is a Missouri corporation licensed under §§ 374.700–.775, RSMo 1994, as amended, to receive valuable consideration for being surety on bail bonds in connection with judicial proceedings. At the time of the hearing referred to in the first paragraph of this opinion,[2] AABC had "probably 12 [agents]" writing bonds in approximately 54 or 55 counties in Missouri. One of AABC's agents is Ray Callanan ("Callanan").

The events from which the instant dispute arose began January 18, 1997, when Delacruz was arrested on a Dunklin County warrant for sale of a controlled substance, a felony. On January 20, 1997, Delacruz, as principal, signed a $20,000 bail bond ("the subject bond"). Callanan signed the subject bond as agent for AABC, ostensibly binding AABC as surety thereon. Attached to the subject bond was a document denominated "Power of Attorney," received in evidence as State's Exhibit 1 at the hearing referred to in the first paragraph of this opinion.

State's Exhibit 1 is a printed form with blanks to be filled in by handwriting. A portion of State's Exhibit 1 is set forth below. The words in blanks are handwritten; the rest of the excerpt is printed:

"[AABC] does hereby make, constitute and appoint <u>Ray Callanan</u> in the City of <u>Kennet</u> [sic], County of <u>Dunklin</u>[3], State of Missouri, with limited authority, its true

---

1. Where a statement of fact in one party's brief is conceded to be true in the adversary's brief, an appellate court may consider it as though it appears in the record. *State ex rel. Missouri Highway and Transportation Commission v. Sweeney,* 933 S.W.2d 908, 910[1] (Mo.App. S.D.1996).

2. The hearing occurred October 20, 1997.

3. This may arguably read "Donklin"; the handwriting is somewhat illegible.

and lawful agent and Attorney–in–Fact, in said State with full power and authority hereby conferred, to sign, execute, acknowledge and deliver, for and on its behalf as surety, the following bonds:

DEFENDANT'S COURT BOND INCLUDING ALL APPEAL BONDS IN AN AMOUNT NOT TO EXCEED $ No Limit

The acknowledgment and execution of any such document by said Attorney–in–Fact, shall be as binding upon this corporation as if such bond had been executed and acknowledged by the regularly elected officers of this corporation.

ALL AUTHORITY HEREBY CONFERRED SHALL EXPIRE AND TERMINATE WITHOUT NOTICE ONE YEAR FROM DATE. 12/22/96 "

State's Exhibit 1 displayed the signature of L. David Duncan ("Duncan"), president of AABC, together with the signature and seal of a notary public. Duncan's testimony, synopsized later in this opinion, supplies further enlightenment about State's Exhibit 1.

The subject bond (with State's Exhibit 1 attached) was presented to a "deputy jailer." He accepted it and released Delacruz from jail. The subject bond required Delacruz to appear in the trial court the following day (January 21, 1997).

Delacruz failed to appear in the trial court January 21, whereupon the trial court declared a forfeiture of the subject bond per Rule 33.14, Missouri Rules of Criminal Procedure (1997), and issued a new warrant for Delacruz's arrest.

At the hearing referred to in the first paragraph of this opinion, Duncan testified that "prior to February of 1997," AABC filed monthly "qualifying affidavits" in Dunklin County. AABC's brief asserts those filings were pursuant to Rule 33.18.

AABC's lawyer showed Duncan State's Exhibit 3, a 38–page sheaf of papers stamped "Filed" by the Circuit Clerk on January 31,

1997. Duncan identified State's Exhibit 3 as "our general affidavit of qualification."

Among the papers in State's Exhibit 3 is a one-page document denominated "Special Power of Attorney," signed by Duncan and acknowledged before a notary public. The document declares that AABC has appointed Duncan and Bobby G. McGuire ("McGuire") its attorneys to execute bail bonds on its behalf in Dunklin County. Duncan emphasized to the trial court that State's Exhibit 3 contains no "qualifying language" authorizing Callanan to execute bonds on behalf of AABC in Dunklin County.

As reported earlier in this opinion, at the time Callanan signed the subject bond, he was an agent of AABC. Duncan conceded Callanan wrote bonds for AABC in St. Francois County and Cape Girardeau County; however, Duncan avowed AABC never authorized Callanan, "either verbally or in writing," to write bonds for AABC in Dunklin County. According to Duncan, he first learned Callanan had written the subject bond "around the 5th of February," when he received Callanan's "paper work."

Duncan also testified that AABC's "agents" are "not even authorized to write bonds above $5,000 without contacting our office."

AABC's lawyer handed Duncan State's Exhibit 1, a portion of which is set forth earlier in this opinion. As previously noted, State's Exhibit 1 was attached to the subject bond.

Duncan told the trial court that State's Exhibit 1 is "a photostatic copy of a power of attorney." Duncan then proceeded to explain that some "original writing" appears on State's Exhibit 1. Duncan's testimony:

"Q. Now, what specifically on that photostatic copy has been filled in in original form?

A. The name of the agent, the city, county, the date, the date of the—the witness of the notary public." [4]

4. As this court comprehends Duncan's testimony, the date of "the witness of the notary public" is December 20, 1996. As recounted earlier in this opinion, State's Exhibit 1 displayed Duncan's signature, together with the signature and seal of a notary public. State's Exhibit 1 also displayed

the expiration date of the notary's commission. This court interprets Duncan's testimony as an explanation that the items listed in the two preceding sentences were already on State's Exhibit 1 when it was photocopied, and that the "origi-

Duncan also avowed that the words "No Limit" on State's Exhibit 1 were "original writing." According to Duncan, the "original writing" appeared to be Callanan's.

Duncan told the trial court that when AABC's agents are "qualified" to write bonds in a particular county, they are authorized "to complete those blanks and to submit an original power of attorney from [AABC] in order to write a bond." However, insisted Duncan, AABC's agents have no authority to "photo-statically copy" an "original power of attorney" and use the copy to write a bond.

Duncan conceded AABC supplied its agents "anywhere from 20 to 25 powers of attorney and bond applications." In regard to Callanan, Duncan's testimony included this:

"Q .... you, on a regular basis, delivered to [Callanan] blank powers of attorney for his execution and attachment to bonds that he made on behalf of [AABC]; is that correct?

A. Yes."

Duncan identified State's Exhibit 2 as a "filing" AABC made with the trial court March 6, 1997, listing "all the outstanding obligations of [AABC] throughout the state" at that time. State's Exhibit 2 listed the subject bond "as an obligation of [AABC]." Duncan added that when he learned Delacruz had failed to appear in court, "[w]e immediately went to looking for him."

■ Appellate review of this court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32[1]. In obeying those precepts, this court is mindful that credibility of witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part, or all of any witness's testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988). An appellate court assumes the trial court believed the testimony consistent with its judgment. *Tubbs v. Delk,* 932 S.W.2d 454, 455[2] (Mo.App. S.D.1996); *Matthews v. Moore,* 911 S.W.2d 664, 668[3] (Mo. App. S.D.1995). Consequently, an appellate court accepts as true the evidence and inferences from it favorable to the judgment and disregards contrary evidence. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654[2] (Mo. banc 1989).

AABC maintains Callanan had no actual authority to bind AABC as surety on bail bonds in Dunklin County. In support of that hypothesis, AABC relies on Duncan's testimony that although Callanan was an agent of AABC with authority to write bonds for AABC in St. Francois and Cape Girardeau Counties, Callanan had no such authority in Dunklin County. However, the trial court was not obliged to believe Duncan's testimony regarding Callanan's lack of authority in Dunklin County. *Herbert,* 757 S.W.2d at 587[1]. In that regard, AABC produced no documentation showing Callanan's authority did not extend into Dunklin County on January 20, 1997, or that his authority was limited to bonds of $5,000 or less.

In saying that, this court does not overlook State's Exhibit 3, AABC's "general affidavit of qualification" filed in Dunklin County on January 31, 1997, which identifies Duncan and McGuire as AABC's agents to write bonds in that county. The subject bond, however, was signed by Callanan on January 20, 1997, a date that preceded the filing of State's Exhibit 3. AABC presented no "general affidavit of qualification" filed in Dunklin County prior to January 20, 1997. Consequently, there is no documentation in the record that AABC, on or before January 20, 1997, designated only Duncan and McGuire as its agents to write bonds in Dunklin County.

It is thus arguable that the evidence, viewed favorably to the judgment, supports a finding that Callanan had actual authority to bind AABC as surety on bail bonds in Dunklin County at the time Callanan signed the subject bond. However, this court need not decide that issue, as there is a stronger basis for affirming the judgment.

nal writing" on State's Exhibit 1 was inscribed after it was photocopied.

The State asserts the evidence amply supports a finding that Callanan had apparent authority to bind AABC as surety on the subject bond. This court agrees.

■ An apparent agency, also characterized as an agency by estoppel, is created by acts or acquiescence of the purported principal. *Springfield Television, Inc. v. Gary,* 628 S.W.2d 398, 402–03[3] (Mo.App. S.D. 1982). As explained in *Wyler Watch Agency, Inc. v. Hooker,* 280 S.W.2d 849, 854[5] (Mo. App.1955):

> "Apparent authority of an agent, estopping the principal from denying such authority as against an innocent third person, is that authority which a reasonably prudent man, using diligence and discretion, in view of the principal's conduct naturally would suppose the agent to possess."

The concept is expressed another way in *J.B. Osgood Coffee Co. v. Smith,* 264 S.W.2d 891, 892[1] (Mo.App.1954):

> "[W]here a person, by his acts or conduct, has knowingly caused or permitted another to appear as his agent to the injury of a third person, who has dealt with the apparent agent in good faith and in the exercise of reasonable prudence, he will afterwards be estopped to deny the agency when the third person seeks to hold him to account."

■ Viewed favorably to the judgment, the evidence in the instant case established that prior to January 20, 1997 (the date Callanan signed the subject bond), AABC had filed documentation in Dunklin County demonstrating it is licensed by the Division of Insurance of the State of Missouri ("the Division") as a "general bail bond agent." § 374.700(4), RSMo 1994. The evidence also established that Callanan was licensed by the Division as a "bail bond agent." § 374.700(1), RSMo 1994.

Additionally, the transcript reveals that a photocopy of a "card" was attached to State's Exhibit 1. This opinion henceforth refers to the photocopy of the "card" as "Exhibit 1–A."

Exhibit 1–A, as it appears in the legal file, is a small document ostensibly issued by the Division to Callanan. It bears his name and displays an "issue date" of "11 21 96." It certifies he is authorized to transact "bail bond" business. This court infers from the record that Exhibit 1–A was attached to State's Exhibit 1 (which, in turn, was appended to the subject bond) at the time the subject bond was presented to, and accepted by, the "deputy jailer."

Furthermore, Duncan conceded AABC supplied Callanan multiple "blank" powers of attorney identical to State's Exhibit 1 for use in writing bail bonds whereon AABC was surety. Although Duncan testified AABC's agents, including Callanan, had no authority to write bonds above $5,000 without contacting AABC's office, the "blank" powers of attorney did not reflect that limit. Instead, as we have seen, the segment of the power of attorney regarding the monetary limit was left blank, to be filled in by the agent.

AABC argues that State's Exhibit 1 was an "unsigned" power of attorney. Apparently, AABC's theory is that inasmuch as State's Exhibit 1 is a photocopy of a power of attorney, it is "unsigned," even though the original power of attorney from which the photocopy was made was signed by Duncan, was signed by a notary public, and displayed the notary's seal and the expiration date of her commission, all of which appeared on State's Exhibit 1.

AABC cites no authority supporting its theory that State's Exhibit 1 was "unsigned" or that the circumstances enumerated in the preceding paragraph were insufficient to create apparent authority in Callanan to bind AABC as surety on the subject bond.

In sum, the evidence, viewed favorably to the judgment, established: (1) AABC appointed Callanan its agent to execute bail bonds on its behalf in at least two Missouri counties; (2) Callanan was licensed as a bail bond agent by the Division; (3) AABC supplied Callanan "blank" powers of attorney identical to State's Exhibit 1 for use in writing bail bonds whereon AABC was surety; (4) the place for designation of the county on the "blank" powers of attorney was left blank, to be filled in by Callanan; (5) the place for the monetary limit on the "blank" powers of attorney was likewise left blank, to be filled in by Callanan; (6) State's Exhibit 1 proclaimed that Callanan is AABC's agent

and attorney-in-fact "in said State [of Missouri]," with no caveat that he lacked authority in Dunklin County; (7) Callanan attached State's Exhibit 1 and Exhibit 1–A to the subject bond when he presented it to the "deputy jailer."

This court holds the above evidence sufficient to support a finding that AABC, by its conduct, knowingly permitted Callanan to appear as its ostensible agent in Dunklin County with authority to bind AABC as surety on the subject bond, and that a person of reasonable prudence, in the circumstances of the instant case, would have believed Callanan was so authorized. Such a finding renders AABC liable on the subject bond. *Wyler Watch*, 280 S.W.2d at 854[5]; *Osgood Coffee*, 264 S.W.2d at 892[1].[5]

Furthermore, AABC listed the subject bond as an obligation of AABC in its "filing" with the trial court March 6, 1997, and began searching for Delacruz immediately upon learning he had failed to appear. The trial court could have reasonably found from those circumstances that AABC initially deemed itself bound as surety on the subject bond. The trial court could consider such circumstances in assessing Duncan's credibility.

Judgment affirmed.

PREWITT, P.J., and PARRISH, J., concur.

---

**5.** The concept of apparent agency—agency by estoppel—set forth in those cases is akin to the common law principle that where one of two innocent parties must suffer by reason of the acts of a third, the party whose act enabled the third party to bring about the loss must bear it if the other party acted in good faith and without knowledge of the facts. *See: Edmonson v. Waterston,* 342 Mo. 1082, 119 S.W.2d 318, 320[3] (1938); *Thornbury v. Morris Oil Co., Inc.,* 846 S.W.2d 238, 243 (Mo.App. S.D.1993); *Van Hooser v. Banks,* 816 S.W.2d 25, 27–29 (Mo.App. W.D.1991); *Pashalian v. Big–4 Chevrolet Co.,* 348 S.W.2d 628, 634[7] (Mo.App.1961); *Seward v. Evrard,* 240 Mo.App. 893, 222 S.W.2d 509, 513[2] (1949). That principle is further support for the judgment here.