Ronda A. BOST and Brian
Glen Bost, Appellants,

v.

Gordon CLARK, M.D., Patty A.
Runyon, R.N., and Shannon K.
Pirtle, R.N., Defendants,

and

Health Midwest Development Group
d/b/a Lafayette Regional Medical Cen-
ter, and Health Midwest, Respon-
dents.

No. WD 61437.

Missouri Court of Appeals,
Western District.

Aug. 26, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 30, 2003.

Application for Transfer Denied
Oct. 28, 2003.

William H. Pickett, David T. Greis, Kansas City, for Appellant.

Andrew L. McMullen, Richard M. Paul III, Thomas A. Rottinghaus, Kansas City, for Respondent.

Before: NEWTON, P.J., and ULRICH and SMITH, JJ.

EDWIN H. SMITH, Judge.

Ronda A. Bost and her husband, Brian G. Bost, appeal from the trial court's summary judgment in favor of the respondents, Health Midwest Development Group, d/b/a Lafayette Regional Health Center (LRHC), and Health Midwest, on the appellants' claims for wrongful death, personal injury, and loss of consortium. Their claims arose out of the medical care and treatment received by Mrs. Bost in the delivery of the appellants' son, Stephen Tyler Bost, who died at birth from complications associated with the delivery.

The appellants raise two points on appeal, which actually raise only one issue. In both points, they claim that the trial court erred in sustaining the respondents' motion for summary judgment because they were incorrectly denied pre-trial discovery that would have allowed them to respond to and defeat the respondents' motion.

We affirm.

## Facts

In June of 1997, Gordon B. Clark, M.D., began providing care and treatment for Mrs. Bost's second pregnancy. Dr. Clark is an obstetrician who at the time was practicing medicine in Lafayette and Johnson Counties under the name of Comprehensive Women's Care, located in Lexington, Missouri. When Dr. Clark first began providing medical services to Mrs. Bost, he was employed by the respondents. On July 30, 1997, Dr. Clark executed a written release and settlement agreement terminating his employment. Dr. Clark continued to provide care and treatment for Mrs. Bost through the delivery of her baby on October 19, 1997, at the Western Missouri Medical Center (WMMC) in Warrensburg, Missouri, by whom he was then employed. The appellants' baby died during the delivery.

On July 23, 1999, the appellants filed an eleven-count petition in the Circuit Court of Jackson County against the respondents, Dr. Clark, and two delivery room nurses employed by WMMC, Patty A. Runyon and Shannon K. Pirtle. In Counts I–V, the appellants asserted claims for the wrongful death of their son; in Counts VI–X, which essentially mirror the appellants' claims in Counts I–V, they asserted claims for personal injury to Mrs. Bost; and in Count XI, they asserted a loss of consortium claim for Mr. Bost with respect to Mrs. Bost's personal injury claims. In Counts I and VI, which were asserted against all of the named defendants, the appellants alleged that Dr. Clark was guilty of medical malpractice in the care and treatment of Mrs. Bost in the delivery of her baby and that the respondents were vicariously liable for his negligence in that he was their employee or actual agent. In Counts II and VII, which were alternative counts to Counts I and VI and were asserted against all the named defendants, the appellants alleged that the respondents were vicariously liable for the negligence of Dr. Clark because he was the ostensible or apparent agent of the respondents. In Counts III and VIII, which were alternative counts to Counts I, II, VI, and VII and were asserted against the respondents only, the appellants alleged that the respondents were negligent in the hiring and/or retention of Dr. Clark. Counts IV, V, IX, and X were asserted against Dr. Clark alone.

On March 5, 2001, the respondents filed a motion for summary judgment. On April 16, 2001, the trial court sustained the motion without a response being filed by the appellants. On April 20, 2001, the appellants filed a motion to set aside the trial court's summary judgment for the respondents on the basis that the appellants never received notice of the respondents' motion. The appellants' motion to set aside was not opposed by the respondents and was sustained by the trial court on May 2, 2001, allowing the appellants thirty days within which to respond to the respondents' motion for summary judgment.

On April 5, 2001, the respondents filed a request for production, requesting:

1. the credentialing file of Dr. Clark;
2. the personnel file of Dr. Clark;
3. the contract between Dr. Clark and the respondents;
4. all documents and communications in the custody of the respondents relating to his ability to perform obstetrics and deliveries;
5. the medical staff by-laws of the respondents for 1997;
6. the minutes of meetings of the medical staffs of the respondents during 1997;
7. the minutes of meetings of the medical executive committees of the respondents during 1997;
8. the rules, regulations, policies, procedures, guidelines or suggestions of the ob-gyn departments of the respondents during 1997;
9. the rules, regulations, policies, procedures, guidelines or suggestions relating to business associates or partners credentialing one another; and
10. the bound notebook or other document kept by the respondents' operating room personnel to inform them of what credentials a physician may have to perform certain operations.

On May 5, 2001, the respondents served its objections to the appellants' request for production.

On May 29, 2001, the appellants filed a motion to compel the discovery requested in its motion of April 5, 2001. On the same day, the appellants also filed a motion seeking an extension of time to respond to the respondents' motion for summary judgment. Accompanying the motion was an affidavit of the appellants' lead trial counsel stating that "the information sought in the request for production was necessary in order to respond to the Health Midwest motion."

On June 19, 2001, the appellants' motion to extend the time for them to respond to the respondents' motion for summary judgment was granted. However, their motion to compel was denied. On that same date, the appellants filed what they denominated as a "preliminary response" to the respondents' motion for summary judgment stating that they were unable to respond to the motion because they had been deprived access to the documents needed to respond and that they were filing a petition for a writ of prohibition in this court, "seeking reversal of the [trial] Court's ruling on the motion to compel and an extension of time following receipt of the documents in which to respond to the motion for summary judgment." The petition was filed and denied by this court on June 20, 2001. On June 26, 2001, the appellants filed a motion asking the trial court to reconsider the denial of their motion to compel, which was denied on July 13, 2001.

On July 26, 2001, the appellants sought a writ of prohibition from the Missouri Supreme Court seeking to compel the discov-

ery they had requested from the respondents. The Court issued a preliminary writ on August 6, 2001. The case was briefed and argued before the Court. The Court quashed the preliminary writ on December 18, 2001.

Having failed in their attempt to compel the production of the requested documents and information, the appellants served a subpoena *duces tecum* on Jeff Tarant, the records custodian for the respondents, seeking the production of essentially the same documents and information sought in their motion to compel, except they also sought:

> [a]ll documents, tapes, records, or data in any form in the possession of the [respondents] containing any correspondence, communications, discussions of, or reference to, any differences of opinion between [Dr. Clark], and [the respondents] or discussions of or reference to potential or actual discipline of [Dr. Clark] or any information whatsoever concerning the termination of the employment or other relationship between [Dr. Clark] and [the respondents].

The appellants also noticed up the deposition of the records custodian. On January 29, 2002, the respondents filed a motion to quash the subpoena *duces tecum* and a motion for a protective order to prevent the production of the documents and the deposition of the records custodian. A second motion for a protective order was filed on that same date.

On February 2, 2002, the appellants filed a motion seeking an extension of time to respond to the respondents' motion for summary judgment alleging that they could not respond until they received the discovery sought by the subpoena *duces tecum*. On March 15, 2002, the trial court: (1) overruled the appellants' motion for an extension of time to respond to the respondents' motion for summary judgment; (2) sustained the respondents' motions to quash the subpoena *duces tecum* and for protective orders; and (3) sustained the respondents' motion for summary judgment.

Prior to granting the respondents' motion for summary judgment, the appellants settled all claims against the delivery room nurses. And, on April 18, 2002, the trial court approved the wrongful death claims against Dr. Clark and, pursuant to a stipulation of the parties, dismissed the remaining claims against Dr. Clark. The trial court's final judgment was signed on April 18, 2002, which was filed with the circuit clerk on April 23, 2002.

This appeal follows.

## Standard of Review

■ Our review of the trial court's grant of summary judgment is essentially *de novo*. *Sloss v. Gerstner*, 98 S.W.3d 893, 895 (Mo.App.2003) (*citing ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993)). We employ the same criteria used by the trial court in determining the propriety of sustaining the motion initially. *Id.* Because summary judgment is founded on the record submitted and the law, the propriety of summary judgment is purely an issue of law such that we need not defer to the trial court's grant of summary judgment. *Id.*

We will affirm the trial court's grant of summary judgment if we find that: (1) there is no genuine dispute of material fact; and (2) that on those facts, the movant is entitled to judgment as a matter of law. *Id.* In considering whether that standard has been met, we review the record in the light most favorable to the non-movant and accord the non-movant the benefit of all reasonable inferences from the record. *Id.*

## I.

The appellants claim that the trial court erred in granting the respondents' motion for summary judgment because they were improvidently denied the pre-trial discovery they had requested. Specifically, they claim that, under the applicable rules and laws governing pre-trial discovery, they were entitled to the documents and information sought in their request for production and subpoena *duces tecum,* and, in denying them access to those documents and that information, the trial court effectively deprived them of the due process right of responding in an informed manner to the respondents' motion for summary judgment.

■ As the appellants contend in their brief, the 2002 version of Rule 74.04(c)(2) [1] expressly provided that a non-movant, in response to a motion for summary judgment, could seek a continuance to respond to the motion alleging that the non-movant "ha[d] not had sufficient time to conduct discovery on the issues to be decided in the motion for summary judgment" and setting forth in an affidavit what "additional discovery [is] needed in order to respond to the motion for summary judgment and the efforts previously made to obtain such discovery." The supporting affidavit "must specify what additional evidence supporting the existence of a factual dispute the movant would have presented to the court if the court had continued the hearing. It is not sufficient to claim that further discovery might provide the necessary evidence. Rather, the affidavit must describe the evidence." *Binkley v. Palmer,* 10 S.W.3d 166, 173 (Mo.App.1999).

Pursuant to Rule 74.04(c)(2), the appellants twice sought continuances from the trial court to conduct further discovery before responding to the respondents' motion for summary judgment. The trial court sustained the first motion, but denied the second, which the appellants indirectly attack on appeal by contending that they needed a second continuance to conduct further discovery to respond adequately to the respondents' motion because the discovery they had requested had been denied by the court. The real attack by the appellants, however, is on the failure of the trial court to grant their requested discovery. Regardless of how many continuances would have been granted by the trial court, it is obvious from the record that as long as the court continued to deny the discovery requested, the appellants were going to claim that they were not in a position to respond to the respondents' motion for summary judgment in an informed manner. Thus, in deciding whether it was error for the trial court to grant the respondents' summary judgment motion, the issue for us is not whether a continuance should have been granted to permit further discovery by the appellants, but whether the appellants' requested discovery should have been allowed and, if it had been, would it have yielded additional evidence supporting the existence of a factual/issue dispute sufficient to defeat the respondents' motion for summary judgment. In other words, the issue is twofold: (1) Should the appellants' requested discovery have been allowed? and (2) If it should have been allowed, would it have produced evidence sufficient to defeat the respondents' motion? If the discovery requested was not likely to produce evidence sufficient to defeat the respondents' motion for summary judgment, then, obviously, the failure of the trial court to grant the requested discovery was, at best, harmless error.

---

1. All rule references are to Missouri Rules of Civil Procedure (2002), unless otherwise indicated. That provision is noticeably absent from the 2003 version.

To make a *prima facie* case for summary judgment under Rule 74.04, the movant must allege facts, which are supported by specific references to the pleadings, discovery, exhibits or affidavits, demonstrating the lack of a genuine issue as to such facts and which establish a right to judgment as a matter of law. Rule 74.04(c); *Williams v. Mo. Highway and Transp. Comm'n*, 16 S.W.3d 605, 610 (Mo. App.2000). If the movant is a defending party, as is the case here, he can make a *prima facie* case for summary judgment by showing either: (1) facts that negate any one of the claimant's elements facts; (2) that the non-movant, after an adequate period of discovery, has not been able to produce and will not be able to produce evidence sufficient to allow the trier-of-fact to find the existence of any one of the claimant's elements; or, (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defense. *Id.* "Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law." *Williams*, 16 S.W.3d at 610. And, to make a *prima facie* case for full summary judgment on a claim, as opposed to partial summary judgment, which is interlocutory in character and not a final judgment subject to appellate review, *Gould v. Rafaeli*, 822 S.W.2d 494, 494–95 (Mo.App.1992), the defending party-movant must establish that he is entitled to judgment as a matter of law on his claim as to each and every theory of recovery pled by the plaintiff. *Moreland v. Farren–Davis*, 995 S.W.2d 512, 516 (Mo. App.1999).

In their petition, the appellants alleged six counts against the respondents:

Counts I, II, and III for the wrongful death of their son; Counts VI, VII, and VIII for the personal injuries of Mrs. Bost; and Count XI for the loss of consortium of Mr. Bost with respect to Counts VI, VII, and VIII. In Counts I and VI, the appellants alleged that the respondents were "vicariously liable for all [the negligent] acts and omissions" alleged as to Dr. Clark in that, in the course thereof, he was acting as an "agent, servant or employee of [the respondents], and was acting in the course and scope of his employment." In Counts II and VII, pled as alternatives to Counts I and VI, the appellants alleged that if Dr. Clark was not an agent, servant, or employee of the respondents, the respondents were still vicariously liable for Dr. Clark's negligence in that he was its "ostensible or apparent agent." In Counts III and VIII, the appellants alleged that the respondents were negligent in hiring or retaining Dr. Clark. The respondents contend that they alleged in their motion for summary judgment undisputed material facts which entitled them to judgment as a matter of law with respect to all three alternative theories of recovery pled as to the appellant's wrongful death and personal injury claims. The respondents further contend that, in showing that they were entitled to judgment as a matter of law as to Counts VI, VII and VIII, they were also entitled to judgment as a matter of law as to Mr. Bost's loss of consortium claim in Count XI in that it is dependent on Mrs. Bost being successful on either Count VI, VII or VIII.

There is no dispute that the appellants did not file a response to the respondents' motion in accordance with Rule 74.04(c)(2) such that the material facts alleged therein were deemed admitted. Rule 74.04(e);[2]

---

**2.** The 2003 version of the summary judgment rule expressly provides that a "response that does not comply with this Rule 74.04(c)(2) with respect to any numbered paragraph in movant's statement is an admission of the

*Zipper v. Health Midwest,* 978 S.W.2d 398, 409 (Mo.App.1998). And, there is no dispute that the appellants do not challenge on appeal the sufficiency of those facts, when taken as true, to establish a *prima facie* case for summary judgment as to the counts alleged as to the respondents. Rather, they claim that the trial court erred in ruling on the respondents' motion without affording them the discovery they sought, arguing that such discovery could have led to evidence that would have allowed them to put in dispute one or more of the material facts or issues relied on by the respondents for summary judgment.[3] Because the respondents, as defending parties, were not entitled to full summary judgment on the appellants' claims unless they could show an entitlement to judgment as a matter of law on all the theories pled as to each claim, *Wilson ex rel. Wilson v. Simmons,* 103 S.W.3d 211, 216 (Mo. App.2003), for clarity's sake, we will address each theory of recovery separately.

**A. Count I, Wrongful Death, and Count VI, Personal Injury—Dr. Clark Acting as Employee or Actual Agent of Respondents**

 In both Count I for wrongful death and Count VI for personal injury, the appellants alleged, *inter alia,* that the respondents were vicariously liable for the alleged negligent acts and omissions of Dr. Clark in delivering their baby in that at the time he was acting as the "agent, servant or employee" of the respondents. There were no allegations of direct negligence by the respondents in either count.

 It is well settled in the law that under the doctrine of *respondeat superior,* an employer or principal is vicariously liable for the negligent acts or omissions of his employee or agent that are committed within the course and scope of his employment or agency. *Bargfrede v. Am. Income Life Ins. Co.,* 21 S.W.3d 157, 161 (Mo.App. 2000). However, to invoke the doctrine, there must be evidence that the relationship of employer-employee or principal-agent existed between the parties when the alleged negligent act or acts occurred. *Id.*

The appellants alleged in Counts I and VI of their petition that Dr. Clark was negligent in providing health care services to Mrs. Bost associated with the delivery of her baby on October 19, 1997, at the Western Missouri Medical Center in Warrensburg, Missouri, and at the time he was acting as an employee or actual agent of the respondents. In their motion, the respondents sought to negate this proof element of the appellants' claims in Counts I and VI, alleging that Dr. Clark was neither an employee nor actual agent of the respondents at that time. In support of that allegation, they cited to the deposition testimony of Dr. Clark that he had terminated his employment with LRHC on July 30, 1997, over a "contract dispute," after which he, not LRHC paid the rent on his clinic building. In further support of their allegation, the respondents attached to their statement of uncontroverted facts a copy of the *"GENERAL RELEASE AND SETTLEMENT AGREEMENT"* entered into between Dr. Clark and the respondents on July 30, 1997, reflecting that Dr.

---

truth of that numbered paragraph." Rule 74.04(c)(2).

**3.** In their brief, the appellants argued: "Plaintiffs were never able to make a response to the motion for summary judgment filed by Health Midwest because the trial

court denied both attempts by Plaintiffs—once by a request for production and once by a subpoena duces tecum—to obtain information from Health Midwest *without which a response could not be made."* (Emphasis added.)

Clark's physician employment agreement with the respondents, dated December 18, 1995, was terminated as of July 31, 1997, and that Dr. Clark would voluntarily withdraw and resign his privileges at LRHC, LRHC would transfer to Dr. Clark title to all tangible assets of Comprehensive Women's Care Clinic, LRHC would assign all rights to Dr. Clark to the Clinic's accounts receivables, and LRHC would assign and transfer to Dr. Clark its existing leasehold interest in the lease of the Clinic. The appellants also cited to the deposition testimony of Mrs. Bost that she believed that "there was change in employment with Dr. Clark in July, 1997, when he told [her] the baby would be delivered in Warrensburg," rather than the respondents' hospital in Lexington, and that she believed Dr. Clark was an employee of the hospital in Warrensburg. This evidence, coupled with the fact that the appellants do not dispute the fact that their baby was delivered at the hospital in Warrensburg, which was totally unrelated to the respondents, was clearly sufficient to negate the appellants' allegation that Dr. Clark was an employee of the respondents when he delivered the appellants' baby.

▬ Alternatively, the appellants contend that even if Dr. Clark was not the respondents' employee when the alleged malpractice occurred, he was their actual agent. "Two elements are required to establish an agency relationship: (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf, and (2) the agent must be subject to the principal's control." *Wray v. Cmty. Health Ctr.*, 901 S.W.2d 167, 170 (Mo.App.1995). An agent's authority to act on behalf of the principal is the:

> power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him. Actual au-

thority may be express or implied. Express authority is created when the principal explicitly tells the agent what to do. Implied authority consists of those powers incidental and necessary to carry out the express authority.

*Nichols v. Prudential Ins. Co.*, 851 S.W.2d 657, 661 (Mo.App.1993) (citations omitted). "The touchstone [in establishing agency] is whether the party sought to be held liable has the control or right to control the conduct of another in the performance of an act." *Ritter v. BJC*, 987 S.W.2d 377, 385 (Mo.App.1999).

The same evidence that would support a reasonable inference that Dr. Clark was not an employee of the respondents at the time of the alleged acts of malpractice, would support a reasonable inference: that he was not their actual agent. The evidence in the summary judgment record supports only one inference, that the respondents exercised absolutely no control over Dr. Clark after he terminated his employment with them in July of 1997, pursuant to the written release and settlement agreement. *See ITT*, 854 S.W.2d at 382 (stating that: "if the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists").

Having determined that the evidence in the summary judgment record only supported the inference that Dr. Clark was neither the employee nor actual agent of the respondents at the time of his alleged malpractice, the question then becomes whether the denied discovery requested by the appellants would have produced evidence that would have put in genuine dispute that issue such that the outcome of the respondents' motion would have been different. *See State v. Tisius*, 92 S.W.3d 751, 762 (Mo. *banc* 2002) (holding that the

focus in reviewing a claim that a party was denied meaningful pre-trial discovery is whether the denial of discovery affected the result of the trial); *Curnutt v. Scott Melvin Transp., Inc.,* 903 S.W.2d 184, 193 (Mo.App.1995). Without such a showing, any error in denying the discovery would be harmless error.

In their motion to compel and subpoena *duces tecum,* the appellants sought the credentialing file of Dr. Clark; his personnel file; the employment agreement between Dr. Clark and the respondents; any and all documents relating to Dr. Clark's ability to perform obstetrics and deliveries in 1997; and certain by-law, rules, regulations and the minutes of 1997 meetings concerning the practice of obstetrics at LRHC. The appellants do not explain on appeal how this requested discovery would have reasonably led to evidence that would show a genuine issue for trial with respect to Dr. Clark's being the employee or actual agent of the respondents at the time of his alleged malpractice in delivering the appellants' baby. Likewise, from the summary judgment record, we fail to see how the requested discovery would have assisted the appellants in that regard. As such, even if we were to assume, *arguendo,* that the trial court somehow erred in failing to compel the discovery requested by the appellants, it was at best harmless error with respect to the trial court's granting the respondents summary judgment on the appellants' claims in Counts I and VI in that it would not have changed the outcome of the respondents' summary judgment motion. *Id.*

**B. Count II, Wrongful Death, and Count VII, Personal Injury—Dr. Clark Acting as the "Ostensible or Apparent Agent" of the Respondents**

In Count II for wrongful death and Count VII for personal injury, pled as alternatives to Counts I and VI, the appel-

lants alleged that the respondents were vicariously liable for Dr. Clark's alleged negligence in delivering the appellants' baby in that he was acting as the respondents' "ostensible or apparent agent." Given the nature of apparent or ostensible agency, we fail to see how the appellants' requested discovery would have changed the outcome of the respondents' summary judgment motion.

"An apparent agency, also characterized as an agency by estoppel, is created by acts or acquiescence of the purported principal." *State v. Delacruz,* 977 S.W.2d 95, 99 (Mo.App.1998). To rely on apparent agency, the proponent must show:

> (1) the [apparent] principal manifested his consent to the exercise of such authority or knowingly permitted the [apparent] agent to assume the exercise of such authority; (2) the person relying on this exercise of authority *knew of the facts* and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority; and (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal.

*Link v. Kroenke,* 909 S.W.2d 740, 745 (Mo. App.1995) (emphasis added). "Apparent authority exists only with regard to those who believe and have reason to believe that there is authority." *United Mo. Bank, N.A. v. Beard,* 877 S.W.2d 237, 240 (Mo.App.1994) (citation omitted).

Under the recited standard, for the appellants to rely on apparent agency to recover in Counts II and VII, any acts demonstrating Dr. Clark's apparent authority to act on behalf of the respondents in delivering the appellants' baby would had to have been known to Mrs. Bost at

the time and relied upon by her. Here, however, in claiming as they do, the appellants are essentially conceding that they needed additional discovery to discover that which Mrs. Bost must have already known in order to rely upon the apparent authority of Dr. Clark to recover against the respondents in Counts II and VII. In other words, in claiming as they do, they essentially are conceding that the discovery denied by the trial court would not have changed the outcome of the respondents' motion for summary judgment and was, therefore, harmless error. *Tisius,* 92 S.W.3d at 762; *Curnutt,* 903 S.W.2d at 193.

### C. Count III, Wrongful Death, and Count VIII, Personal Injury—Negligent Hiring and/or Retention

As alternatives to Counts I, II, VI, and VII, in Count III for wrongful death and Count VIII for personal injury, the appellants alleged that the respondents were directly negligent in hiring and/or retaining Dr. Clark as an employee, resulting in the death of the appellants' baby and personal injury to Mrs. Bost. In that regard, the appellants alleged in their petition that the respondents were negligent in failing to adequately investigate Dr. Clark's background and determining that he was incompetent before hiring him and in retaining him, after they knew or should have known that he was incompetent.

It is well settled that an employer is liable for the harm resulting from an employee's actions if the employer negligently or recklessly employs or retains an "incompetent person" for work involving risk of harm to others. *Sullivan v. St. Louis Station Associates,* 770 S.W.2d 352, 356 (Mo.App.1989). In order to establish a claim for negligent hiring and/or retention, the plaintiff must show that: "(1) the employer knew or should have known of the employee's dangerous proclivities, and (2)

the employer's negligence was the proximate cause of the plaintiff's injuries." *Gibson v. Brewer,* 952 S.W.2d 239, 246 (Mo. banc 1997). "Implicit to this cause of action ... is the threshold requirement that the plaintiff prove that an employer-employee relationship existed between the defendant and the tortfeasor." *J.H. Cosgrove Contractors, Inc. v. Kaster,* 851 S.W.2d 794, 798 (Mo.App.1993). "The general test for proximate cause is whether an injury is the natural and probable consequence of the defendant's negligence." *Stanley v. City of Independence,* 995 S.W.2d 485, 488 (Mo. banc 1999). In other words, assuming the employer knew or should have known of the employee's dangerous proclivities, the test of proximate cause, in the context of a cause of action for negligent hiring and/or retention, is whether such proclivities would naturally and probably put the employee at risk to commit the negligent acts alleged. *Reed v. Kelly,* 37 S.W.3d 274, 277 (Mo.App.2000). Thus, to recover on their negligent hiring/retention claims in Counts III and VIII, the appellants necessarily had to show that the respondents knew or should have known that Dr. Clark, based on past acts of incompetence, posed a danger to Mrs. Bost in his care and treatment of her in delivering her baby.

Even assuming, *arguendo,* that the appellants could show that Dr. Clark had a history of medical malpractice that was known or should have been known to the respondents, to establish proximate cause for their negligent hiring and/or retention claims in Counts III and VIII, they would also have to show that the dangerous proclivity exhibited by the prior acts of malpractice was consistent with the particular acts of negligence pled. *Id.* In that regard, in claiming that Dr. Clark was negligent in his care and treatment of Mrs. Bost with respect to her pregnancy, the

appellants' specifications of negligence primarily centered on his decision to deliver the baby vaginally, rather than by C-section. In addition, they alleged various other deficiencies associated with the actual delivery. There were no allegations with respect to his prenatal care or treatment of Mrs. Bost. Likewise, the appellants' medical expert, Dr. Friedman, in his deposition testimony cited in the respondents' motion, had no criticisms of Dr. Clark's prenatal care of Mrs. Bost. Thus, to establish proximate cause for their negligent hiring and/or retention claims, the appellants were required to demonstrate that Dr. Clark was not only guilty of past medical malpractice that was known or should have been known to the respondents, but that it was likely to pose a danger to Mrs. Bost with respect to the negligent acts alleged by the appellants in their petition concerning the delivery of her baby.

As we discuss, *supra*, the evidence in the summary judgment record clearly establishes that Dr. Clark's employment at LRHC was terminated almost three months prior to the delivery of the appellants' baby at a hospital totally unrelated to the respondents. And, as we also discuss, *supra*, the appellants do not explain how the discovery they sought and was denied would put that issue in dispute. Similarly, the appellants point to nothing in the summary judgment record or explain how the discovery they sought and was denied would demonstrate that what the respondents knew or should have known about Dr. Clark's competency in hiring and retaining him through July in any way was the proximate cause of or related to his alleged negligent acts in delivering the appellants' baby on October 19, 1997. Likewise, from the summary judgment record made, we fail to see how the discovery that was denied would have in any way aided the appellants' cause in changing the outcome of the trial court's ruling on the respondents' motion. As such, any error in failing to grant the appellants' discovery, as it relates to the grant of summary judgment to the respondents on the appellants' claims, would be harmless. *Tisius*, 92 S.W.3d at 762; *Curnutt*, 903 S.W.2d at 193.

## Summary

As discussed, *supra*, the appellants chose not to respond to the respondents' motion for summary judgment, as required by Rule 74.04(c)(2), choosing instead to stand on their contention that they could not be required to respond unless and until they received the discovery to which they argued they were entitled under the law and facts of the case. In doing so, they ran the risk that the trial court would not allow the discovery they sought and would rule on the respondents' motion for summary judgment without the benefit of a response from the appellants such that the respondents' alleged uncontroverted material facts would be deemed as true, which would lead to a judgment against them, provided the facts deemed as true entitled the respondents to judgment on the appellants' petition, as a matter of law. The appellants did not contend below and do not contend on appeal that the facts alleged in the respondents' motion, if taken as true, would not be sufficient to make a *prima facie* case for summary judgment on all three claims alleged against them in the appellants' petition, regardless of the theory pled. And, because the appellants do not explain and we fail to see how the discovery they sought would have reasonably led to any evidence that would have changed the outcome of the respondents' summary judgment motion, any error in the trial court's failure to grant the discovery requested by the appellants was harmless error with respect to the court's granting of the respondents' motion.

Points I and II denied.

## Conclusion

The circuit court's summary judgment for the respondents on the appellants' petition against the respondents for wrongful death, personal injury and loss of consortium is affirmed.

NEWTON, P.J., and ULRICH, J., concur.