Ben **BARGFREDE** and Sara Bargfrede, Appellants,

v.

**AMERICAN INCOME LIFE INSURANCE COMPANY,**
et al., Respondent.

No. WD 57623.

Missouri Court of Appeals,
Western District.

June 30, 2000.

158

Mark Roberts, Blue Springs, Bryan D. Scheiderer, Rolla, for Appellants.

Bradley J. Baumgart, G. Edgar James, Kansas City, for Respondent American Income Life Insurance Company.

Before: EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Ben and Sara Bargfrede ("the Bargfredes") appeal the grant of a motion for summary judgment in favor of American Income Life Insurance Company ("AIL") on their claim for the wrongful death of their son in an automobile accident on December 11, 1996. A vehicle driven by Peter Gudeman ("Mr. Gudeman") collided with their son's pickup truck. At the time,

Mr. Gudeman was an insurance agent heading to an appointment with a potential customer. Mr. Gudeman had an agent's contract with AIL by which he agreed to sell only AIL insurance products. Larry Geneser ("Mr. Geneser") was the state general agent in Missouri for AIL. The Bargfredes filed a wrongful death action against Mr. Geneser and AIL. The petition alleged that Mr. Geneser and AIL "operated a joint venture."[1] They claimed Mr. Gudeman was the "servant, employee and agent" of both Mr. Geneser and AIL, and was traveling to meet a prospective client on their behalf when he negligently caused the accident. Thus, they sought vicarious liability recovery from Mr. Geneser and AIL under the doctrine of *respondeat superior*.

AIL moved for summary judgment on the grounds that Mr. Gudeman was an independent contractor and, therefore, AIL was not vicariously liable under the doctrine of *respondeat superior* for his negligence. The trial court determined that whether or not Mr. Gudeman was an agent "is more properly a question of law, to be determined by the Court's review of a set of factors that distinguishes an 'employee' from an 'independent contractor.'" After considering the various factors, the trial court sustained AIL's motion for summary judgment holding:

> [I]t is uncontroverted that, although Gudeman was "expected" to have a motor vehicle, AIL did not provide any transportation for Gudeman. It is also uncontroverted that no social security funds or taxes were taken out of Gudeman's commission checks. AIL did not contribute to unemployment insurance or a workers' compensation fund for Gudeman. In addition, although Gude-

man was required to pick up any prospective leads at an office, the Geneser affidavit describes the office at which Gudeman picked up the leads as Geneser's office, not an AIL office.

> This Court finds that, based on the test outlined in *Glynn*,[2] [Gudeman] was acting as an independent contractor in this case rather than as an agent of AIL, and that, therefore, separate Defendant AIL is entitled to judgment as a matter of law.

After their claim against Mr. Geneser was settled and the court approved the settlement, the Bargfredes brought this appeal.[3] They allege the court erred in granting the summary judgment on behalf of AIL, because there was a material dispute of fact as to whether Mr. Gudeman was AIL's agent at the time of the accident.

### Standard of Review

We review *de novo* a trial court's granting of summary judgment. *Dunagan by and through Dunagan v. Shalom Geriatric Center*, 967 S.W.2d 285, 287 (Mo.App. W.D.1998). In doing so, we consider the record in the light most favorable to the Bargfredes and accord them all reasonable inferences that may be drawn from the record. *Id.* We consider summary judgment "'an extreme and drastic remedy'" and are cautious in affirming it, "because the procedure implicates the denial of due process by denying an opposing party [its] day in court." *Horner v. Spalitto*, 1 S.W.3d 519, 522 (Mo.App. W.D.1999) (*quoting ITT Commercial Finance Corporation v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993)). Nonetheless, summary judgment is appropriate if there are no genuine issues of material fact, and the movant is entitled to

---

1. We are unable to discern the exact relationship between Mr. Geneser and AIL except that Mr. Geneser is AIL's "state general agent" in Missouri.

2. *Glynn v. M.F.A. Mut. Ins. Co.*, 363 Mo. 896, 254 S.W.2d 623 (1953).

3. The circuit court granted summary judgment on behalf of AIL on December 29, 1998. Appellants then settled their claim against Mr. Geneser. The court subsequently approved that settlement and final judgment was entered on August 13, 1999. Appellants filed their notice of appeal of the trial court's judgment in favor of AIL on August 23, 1999.

judgment as a matter of law. *Dunagan,* 967 S.W.2d at 287.

■ To be entitled to summary judgment under Rule 74.04, AIL was required to show that: (1) there was no genuine dispute as to the material facts upon which it was relying for summary judgment; and (2) the undisputed facts demonstrated that it was entitled to judgment as a matter of law. Rule 74.04; *ITT,* 854 S.W.2d at 380. If the movant for summary judgment is a defending party, as is the case here, it can establish a *prima facie* case for summary judgment by one or more of the following three methods: (1) showing facts that negate any one of the Bargfredes' required elements of proof; (2) showing that the non-movant, after an adequate period of discovery, has not produced and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support the moving party's properly pleaded affirmative defense. *Id.* at 381.

### Doctrine of *Respondeat Superior*

■ AIL has chosen the first method by showing facts in the affidavits and documents accompanying its motion that negate the master-servant element of the Bargfredes' claim against it as the alleged master. AIL contends that it did not control or have the right to control Mr. Gudeman's work. Thus, AIL alleges it cannot be liable, because Mr. Gudeman was an independent contractor.[4] The Bargfredes contend that they presented sufficient facts in response to AIL's motion to make a *prima facie* case of agency, and, therefore, the issue was required to be submitted to the jury as a question of fact rather than decided as a matter of law in a summary judgment proceeding. The dispositive issue for us to determine is whether the trial court erred in granting summary judgment in holding that, as a matter of law, Mr. Gudeman was an independent contractor and not an employee[5] of the insurance company. The doctrine of *respondeat superior* imposes upon an employer vicarious liability for negligent acts or omissions of his employee or agent that are committed within the course and scope of his employment or agency.[6] *Studebaker v. Nettie's Flower Garden, Inc.,* 842 S.W.2d 227, 229 (Mo.App. E.D.1992). To hold an employer liable under the doctrine of *respondeat superior,* there must be evidence that a master-servant relationship existed between the parties when the alleged negligent act occurred. *Id.*

■ "Generally, the relationship of principal-agent or employer-employee is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship." *Johnson v. Bi–State Dev. Agency,* 793 S.W.2d 864, 867 (Mo. banc 1990). "The employment relation is a question of law for the court *only* where the material facts from which it is to be inferred are not in dispute and *only* one

---

4. "An independent contractor is one who contracts with another to do something for him but is neither controlled by the other nor subject to the other's control with respect to his physical conduct in the performance of the undertaking." *Tom Lange Co., Inc. v. Cleaning by House Beautiful,* 793 S.W.2d 869, 871 (Mo.App. E.D.1990). Someone who contracts for the services of an independent contractor is generally not responsible for the wrongs committed by an independent contractor. *Id.*

5. For purposes of this opinion only, we use the term "employee" as synonymous with "servant," which is defined by the RESTATEMENT (SECOND) OF AGENCY, § 220(1) (1958) ("Restatement") as, "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."

6. The parties do not dispute whether the acts of Mr. Gudeman should be considered as having been in the course and scope of his activities as an insurance sales agent.

reasonable conclusion can be drawn therefrom." *Smoot v. Marks*, 564 S.W.2d 231, 236 (Mo.App.1978) (emphasis added). "A genuine issue of fact exists [thereby precluding summary judgment] where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist." *Ferguson v. Pony Express Courier Corp.*, 898 S.W.2d 128, 131 (Mo.App. W.D.1995). Thus, "[i]f there is uncertainty arising either from conflict in the testimony or because the undisputed facts may lead reasonable men to draw different conclusions as to whether [a master-servant relationship existed], 'the question becomes not one of law but of fact to be settled by the jury.'" *Smoot*, 564 S.W.2d at 236 (quoting *DeMariano v. St. Louis Public Service Co.*, 340 S.W.2d 735, 739–40 (Mo.1960)). Only when the facts are undisputed may the trial court declare *as a matter of law* that one is or is not an independent contractor. *Hougland v. Pulitzer Pub. Co., Inc.*, 939 S.W.2d 31, 33 (Mo.App. E.D.1997) (affirming the trial court's judgment notwithstanding the verdict, because, as a matter of law, on the *undisputed* facts the tortfeasor was an independent contractor of Pulitzer rather than an agent or employee).

 "The test to determine if respondeat superior applies to a tort is whether the person sought to be charged as master had the right or power to control and direct the physical conduct of the other in the performance of the act." *Wilson v. St. Louis Area Council*, 845 S.W.2d 568, 570 (Mo.App. E.D.1992). The determination must be made on the basis of the individual facts of each case. *Id.* at 571. Section 220 of the Restatement sets forth the following factors to assist in "determining whether one acting for another is a servant or independent contractor":

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*See Carter v. Wright*, 949 S.W.2d 157, 160 (Mo.App. W.D.1997) (applying the Restatement factors in order to determine the employment relationship).

None of these elements alone is conclusive, and all must be viewed to see whether control, or the right to control, has been retained over the alleged servant's physical conduct and the details of the work. [Citation omitted.] "[T]he determining factor is not whether respondent actually exercised control over the work ... [but] whether respondent had the *right* to exercise that control." *Id.* (quoting *Pratt v. Reed & Brown Hauling Co.*, 361 S.W.2d 57, 63 (Mo.App.1962) (emphasis in original)); *see also Dean v. Young*, 396 S.W.2d 549, 553–56 (Mo.1965) (applying the Restatement factors to determine the existence of a master-servant relationship).

 To support its motion for summary judgment, AIL in affidavits and documents alleged the following facts: Mr. Gudeman was an independent sales agent for AIL under a contract that specified

that he was an independent contractor and not an employee; he was paid on a commission basis only and furnished his own transportation at his own expense; no social security or withholding taxes were deducted from his checks; and AIL did not "contribute" to unemployment or workers' compensation funds for Mr. Gudeman.[7] The Bargfredes admitted all of these facts.

AIL also alleged in its motion that it provided no office space for Mr. Gudeman, that it provided him no employee benefits, and that he had no fixed hours and was free to do his work when and in the manner he chose. The Bargfredes controvert these alleged facts with support that Mr. Gudeman was required to come to Mr. Geneser's office each day, was required to work certain hours and was required by his contract to follow various rules and regulations of AIL. Although admitting that Mr. Gudeman used his own car, Mr. Gudeman's affidavit claimed that he was required by AIL to personally cover his extensive territory. Mr. Gudeman also stated that health and group life insurance benefits were available to sales agents. AIL also claims that it did not direct him to make specific calls at specific times, nor does it otherwise supervise, direct or control his activities. Through an affidavit by Mr. Gudeman, the Bargfredes claim that Mr. Geneser and AIL provided him leads

and specific appointment times that he was expected to keep.

The Bargfredes asserted as additional material facts that: Mr. Gudeman's contract required him to devote his time exclusively to AIL and had a non-compete clause; he was a member of the Professional Employees Union which had a collective bargaining agreement with AIL that covered insurance agents; and union dues were deducted by AIL from his commission checks. The agreement also restricted AIL's right to terminate without thirty days notice.

Based on the affidavits, documents and evidence before the trial court, there was a genuine issue of material fact, and the trial court therefore erred in granting summary judgment. In so holding, we have considered the Restatement factors as they apply to this case.

*Factors (b) and (h): Type of Business:* The record indicates Mr. Gudeman sold insurance for only AIL at the time of the accident. The Bargfredes argue that Mr. Gudeman was a "captive agent"[8] not engaged in a distinct occupation or business. AIL's training materials[9] state "we are the largest writers of supplemental insurance for the union members in the world." There is no dispute that AIL is in the insurance business.

---

**7.** We are uncertain of what significance AIL places on this because unemployment compensation is not based on individual contributions but rather on an overall payroll tax on the total sum of payroll compensation. Workers' compensation insurance premiums are also not calculated on an individually identified employee basis. AIL may be suggesting that it did not include agents' commission income in its payroll for calculating the tax or premium.

**8.** A "captive agent" in the insurance business is one who is restricted to sales for only one company.

**9.** AIL objects to the use of the training materials used by Mr. Gudeman in support of his contention that he was an employee of AIL. AIL claims that the training materials were not properly authenticated for purposes of considering them in determining Mr. Gude-

man's status. "Only evidentiary materials that are admissible or usable at trial can sustain or avoid a summary judgment." *Partney v. Reed,* 889 S.W.2d 896, 901 (Mo.App. S.D.1994). There is no indication in the record on appeal that AIL objected to this evidence to the trial court after Mr. Gudeman filed his supplemental response to its motion for summary judgment. The rule that a failure to object to the foundation of documents at trial precludes raising the issue on appeal applies equally to summary judgment proceedings. *See Gal v. Bishop,* 674 S.W.2d 680, 683 (Mo.App. E.D.1984) (ruling "[it saw] no reason why the well-established rule that the failure to object to the foundation or qualifications of expert testimony at trial precludes the raising of such issues on appeal [citations omitted] should not apply with equal force to summary judgment").

A general review of the cases involving insurance sales indicates that this function is often carried out by independent agents and other businesses that clearly are independent contractors. The Bargfredes argue that the fact that Mr. Gudeman used his services solely for selling AIL insurance "detracts from [AIL's] contention that he was an independent contractor." *Jokisch v. Life & Cas. Ins. Co. of Tennessee,* 424 S.W.2d 111, 114 (Mo.App.1967). However, the facts in *Jokisch* are substantially different. We do not believe that the collection of premiums is the equivalent of selling policies involved herein. We cannot conclusively say that a captive agent is conclusively a servant of an employer. We can envisage many situations where a captive agent would have sufficient freedom from control to be deemed an independent contractor. *See Vert v. Metropolitan Life Ins. Co.,* 342 Mo. 629, 117 S.W.2d 252 (1938).[10] Nevertheless, Mr. Gudeman's status as a captive agent could, in conjunction with facts indicating the right to control or exercise of control, be sufficient to find a master-servant relationship.

▆▆▆▆ Mr. Gudeman's contract with AIL also included a non-compete clause restricting his right for a specified time in a specified area to sell insurance for any other companies if he left or was terminated by AIL. The Bargfredes argue that this fact likewise indicates Mr. Gudeman is not "engaged in a distinct occupation or business." Restatement § 220(2)(b). Although covenants not to compete are not implicitly void and unenforceable against independent contractors,[11] again that type of control with other facts is some evidence of a master-servant relationship.

▆▆ *Factor (e): Provider of Instrumentalities of Work:* Mr. Gudeman furnished his own automobile and paid his own automobile and travel expenses. However,

"[t]he mere fact that [AIL] did not own the automobile causing plaintiff[s'] injury will not preclude a recovery by the plaintiff[s]." *Margulis v. National Enameling & Stamping Co.,* 324 Mo. 420, 23 S.W.2d 1049, 1051 (1929).

Whether he was *required* to use his automobile is an important disputed fact. The trial court stated in its summary judgment that Mr. Gudeman was "expected to have a car." AIL, relying upon *Glynn,* 254 S.W.2d at 623, claims it did not require Mr. Gudeman to have a car, because he could have walked, ridden public transportation, taken a taxi, etc. The Bargfredes point out that the Supreme Court has also held that where an outside salesman was *required* to furnish his own automobile, that fact in combination with other factors could support a master-servant relationship. *Gardner v. Simmons,* 370 S.W.2d 359, 363 (Mo.1963). Mr. Gudeman was assigned to a broad sales territory covering both Kansas and Missouri in which he was to visit union members to discuss and sell AIL insurance. From its finding, it appears the trial court failed to perceive the distinction between a salesman deciding on his own the method of transportation and being required to furnish an automobile. Mr. Gudeman's affidavit alleged that AIL required him to personally visit prospects, again indicating some restriction on his right to control the manner of work performance. That is inconsistent with independent contractor status. A jury could reasonably find Mr. Gudeman was required to have and use an automobile. *Id.* at 363. Therefore, Mr. Gudeman's use of his own car did not *per se* make him an independent contractor. Again, however, no single factor is conclusive.

▆▆ *Factor (f): Length of Employment:* AIL had the right to discharge Mr. Gude-

---

**10.** In *Vert,* the Supreme Court observed that a life insurance sales agent is usually not a servant subject to the control of the insurance company as to show where or when he does his work. *Id.* at 256.

**11.** *Renal Treatment Centers–Missouri, Inc. v. Braxton,* 945 S.W.2d 557, 563–64 (Mo.App. E.D.1997).

man at any time, and Mr. Gudeman could quit at any time, provided thirty days notice was given pursuant to the contract. "That fact indicates that [Mr. Gudeman] was an employee rather than an independent contractor." *Jokisch,* 424 S.W.2d at 114. His length of employment at the time of signing the sales agent contract was essentially infinite, but "[a]n employer-independent contractor relationship need not be for a fixed time and may be terminable at the will of either party." *Dean,* 396 S.W.2d at 555. Nonetheless, AIL retained the right to terminate Mr. Gudeman without cause. "Closely allied to the power of control is the ability to enforce orders in regard to the manner of performance, usually the right to fire the employee." *Keller v. Missouri Baptist Hosp. of Sullivan,* 800 S.W.2d 35, 38 (Mo. App. E.D.1990).

■ *Factor (i): Parties' Understanding of Relationship:* AIL did not withhold social security or taxes from Mr. Gudeman's paycheck. In addition, AIL did not carry workers' compensation insurance for Mr. Gudeman. Traditionally, these facts would indicate Mr. Gudeman was not an employee. *Burgess v. NaCom Cable Co.,* 923 S.W.2d 450, 454 (Mo.App. E.D.1996). In addition, the contract between AIL and Mr. Gudeman states "[Mr. Gudeman] is not an employee of [AIL]." "While this clause is not necessarily binding on our determination of whether [an employer-employee] relationship exists, it is certainly evidence of the parties' intent." *Byrd v. Sprint Communications Co., L.P.,* 931 S.W.2d 810, 815 (Mo.App. W.D.1996). This suggests Mr. Gudeman was an independent contractor, but we must remember that this factor, although relevant, is just one of many factors to consider and is not determinative of the issue. In discussing factor (i), comment (m) to § 220 of the Restatement proclaims, "[i]t is not deter-

minative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other."

■ *Factor (a): Right to Control:* The most important factor in determining whether AIL is vicariously liable for Mr. Gudeman's actions is the right or power to control that AIL had over Mr. Gudeman in the performance of his work. *Balderas v. Howe,* 891 S.W.2d 871, 873–74 (Mo.App. W.D.1995). "[T]he right to control ... need only be commensurate with the supervision appropriate to the kind of work to be done and the skill required to do it." *Ceradsky v. Mid–America Dairymen, Inc.,* 583 S.W.2d 193, 203 (Mo.App.1979). We have already discussed some elements relating to AIL's control over Mr. Gudeman in addressing the other factors above. However, additional disputed material facts relating to this factor exist.

■ Although the contract explicitly states Mr. Gudeman was not an employee, the contract also enumerates thirteen of Mr. Gudeman's "obligations." These obligations indicate AIL had some control over Mr. Gudeman's method of work and tend to imply an "employee" type situation. *Ferguson,* 898 S.W.2d at 133; Restatement § 220, comment h. For example, the contract states that as an AIL agent, Mr. Gudeman is "to devote full time exclusively to the company"[12] and "follow Company regulations." He was prohibited from working for other insurance companies while working for AIL and was assigned to a specific sales area. AIL asserts that Mr. Gudeman was free to work as much or as little as he pleased. On the other hand, Mr. Gudeman asserts he was required to work six days a week at least

---

12. AIL points to the fact that Mr. Gudeman was licensed with five other insurance companies besides AIL. However, we review the evidence in Mr. Gudeman's favor. The contract and Mr. Gudeman both state the under-

standing that Mr. Gudeman was only to sell AIL insurance while the contract remained binding and no proof was offered that he sold any insurance for the other companies he was licensed with.

eight hours per day. The Bargfredes point to the training materials that indicate he should meet with at least eight appointments per day and each appointment averages one hour in length. AIL claims the statements in the training documents are mere "suggestions." However, it could be inferred that AIL told Mr. Gudeman what to do and how to do it. *Jokisch*, 424 S.W.2d at 114. Likewise, AIL's "stated right to prescribe [regulations] binding upon [Mr. Gudeman] is inconsistent with its contention that he was not subject to company control of his physical conduct in performing his work." *Id.* at 114–15. Overall, these controverted facts are reasonable indicia of a right to control by AIL over Mr. Gudeman, or at least indicate a genuine issue of fact as to AIL's right to control him.

In addition, Mr. Gudeman received $140 per month to pay toward a major medical plan of his choice and was eligible for group life insurance. AIL terms the payment a "production bonus" for agents based solely on the agent's commissions and maintains that it does not provide a major medical program to its agents. In fact, AIL states that it never provided *any* employee benefits. However, the Bargfredes dispute this and argue an inference can be made that the medical plan payment and life insurance were employee benefits provided by AIL. This again is some indication of an employment, not independent contractor relationship. In addition, there was some evidence that Mr. Gudeman was required to obtain approval prior to taking any vacation or sick days (typical employee benefits).

Additionally, AIL's training manual states:

> We have developed a unique marketing concept of associating ourselves with the market place. AIL approaches organizations the customer can identify with and becomes a partner in offering products and service that is represented by sincere and trustworthy professionals. *Through this marketing concept we are able to offer our sales professionals ample quality leads every week.* By following our training techniques and developing your own commitment to excellence AIL will become a winning opportunity for you and your customers.

(Emphasis added.) Mr. Gudeman picked up leads for appointments each morning at Mr. Geneser's office. The exact source of these leads is another disputed material fact. AIL asserts it provided no leads, and Mr. Geneser was solely responsible for providing the leads to agents such as Mr. Gudeman. Mr. Gudeman claims that he got leads from both. Mr. Geneser testified in his deposition that his office contained a telemarketing-type division that would call union members and set up appointments for the agents. The agents would then purchase the leads for three to four dollars each. While it could be inferred that AIL did not directly provide the leads, there is some evidence, i.e. the training manual's statement, that AIL provided its agents with leads. Mr. Gudeman claimed also that appointments were made for him at specific times and places. Although AIL strongly disputes many of these facts, resolution of credibility and disputes of fact are not for summary judgment. The Bargfredes' facts accepted as true, as they must be for this analysis, again are indicative of AIL's control over or right to control the actions of agents such as Mr. Gudeman.

Another genuine issue of material fact involves Mr. Gudeman's union membership. Despite AIL's contentions to the contrary, it appears from the training manual that agents such as Mr. Gudeman were essentially required to join a union. The manual clearly states, "American Income Life is an all union company. Everyone belongs to the Office and Professional Employees International Union." In addition, part of the sales "pitch" the agents give the customers includes informing the customer that the agent, too, is a union member. The Bargfredes point out that Mr. Gudeman's contract with AIL

provided that his compensation (commissions) would be determined in accordance with the union's collective bargaining agreement with AIL. We have found no cases considering this type of arrangement. We cannot say that it is incompatible as a matter of law with independent contractor status, but it seems incompatible.

AIL also argues that the alleged leads and appointments were all from Mr. Geneser and that the trial court found Mr. Gudeman picked up the leads at Mr. Geneser's and not AIL's office. The Bargfredes alleged in their petition that Mr. Geneser and AIL were engaged "in a joint venture." It was undisputed that Mr. Geneser was AIL's state general agent. The exact nature of their relationship was not so clearly shown at the summary judgment stage to support the conclusion that merely because Mr. Gudeman picked up leads at Mr. Geneser's office there was no connection to AIL.

As set forth in its judgment, *supra*, the trial court relied on *Glynn*, 254 S.W.2d at 623–26, in finding Mr. Gudeman was an independent contractor and granting summary judgment. A vehicle driven by an insurance agent struck plaintiff Glynn. At the time of the accident, the agent was on his way to secure an application for a fire insurance policy and to make an inspection of the dwelling to be insured. Plaintiff Glynn alleged that the driver of the car that struck him was an employee of defendant insurance company and that the company was therefore vicariously liable for the agent's negligent acts. The trial court sustained the insurance company's motion to dismiss the petition for failure to state a claim. It found the insurance agent was not defendant's employee because *no evidence showed* that the company had any control, *nor did the petition state* that the insurance company had the right of control over its agent as to the manner in which he did his work. The *Glynn* court found the agent "was free to walk, drive a car, employ a taxi, or ride public conveyances to and from prospective purchasers of insurance. [He] was an agent bringing about contractual relations between insurer and insured." *Id.* at 626. The *Glynn* court relied on § 250 of the Restatement which states: "A principal employing another to achieve a result but not controlling nor having the right to control the details of his physical movements is not responsible for incidental negligence while such person is conducting the authorized transaction." Here the allegations pled and the disputed facts shown are quite different from *Glynn*.

Finally, AIL argues that *Sloan v. Bankers Life & Casualty Co.*, 1 S.W.3d 555, 562–63 (Mo.App. W.D.1999) is indistinguishable from the facts in this case. This court in *Sloan* found a life insurance agent was an independent contractor based on the following analysis:

> There was no provision of the contract which precluded the possibility of independent contractor status. Mr. Sloan was paid strictly on the basis of commissions from the policies he sold. Bankers Life did not withhold taxes from Mr. Sloan's paycheck, but rather accounted for the commissions paid to Mr. Sloan on a Form 1099. Bankers Life provided no vacations, holiday pay, or sick leave. Mr. Sloan determined his schedule, and the amount of time he was going to work, carrying out the sale of insurance on a self-directed basis. He provided his own transportation, and was not reimbursed for his travel expenses. Similarly, he provided his own administrative support at his own expense. Mr. Sloan was responsible for obtaining and maintaining any licenses or permits that were necessary to sell insurance in his assigned territory. Without specifically discussing all of the factors mentioned above, we can say the most important factors indicate that Mr. Sloan is an independent contractor. Bankers Life clearly retains some control of the means of Mr. Sloan's performance, by purporting to restrict his use of the turning 65 lists, and purporting to restrict him from soliciting the clients of

**168**

other agents. However, there is no showing that such restrictions are unusual with regard to independent sales representatives, or are so significant as to tip the scales toward employment status in view of the fact that the most significant factors related to control are more consistent with independent contractor status.

*Id.*

The *Sloan* case is distinguishable. *Sloan* involved the issue of whether the agent was an employee under the Missouri Human Rights Act. *Id.* at 562. There is nothing in *Sloan* that indicates the degree of control or right to control shown by the Bargfredes. There was no indication that *Sloan* involved any of the factors previously discussed that are inconsistent with status as an independent contractor. AIL argues that the inferences from the facts support the inescapable conclusion that Mr. Gudeman was an independent contractor. It is the Bargfredes, however, who must be given the benefit of all inferences as long as they are reasonable. The inferences are not unreasonable upon the facts presently at issue. Credibility and persuasiveness are issues to be resolved later. The Bargfredes presented sufficient facts to avoid summary judgment.

### Conclusion

Taken as a whole, and after considering the Restatement's factors applicable to this case, we cannot say that no genuine issue of material fact as to Mr. Gudeman's status existed. The trial court erred in finding *as a matter of law* that Mr. Gudeman was an independent contractor and that AIL was therefore not vicariously liable for his negligent actions. The matter is reversed and remanded to the trial court for further proceedings.

EDWIN H. SMITH, P.J., and HOLLIGER, J., concur.