

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

COLLIN AND COURTNEY
JEFFERSON, BY AND THROUGH
THEIR NATURAL FATHER AND
NEXT FRIEND, ERIC JEFFERSON AND
THE ESTATE OF GLORIA MITCHELL
MOSS, BY AND THROUGH ITS
PERSONAL REPRESENTATIVE,
WALTER MOSS,

    Plaintiff/Appellant,

vs.

MISSOURI BAPTIST MEDICAL
CENTER AND AMY MOSHER, M.D.
AND MIDWEST RADIOLOGICAL
ASSOCIATES, P.C.,

    Defendants/Respondents.

No. ED99895

Appeal from the Circuit Court
of St. Louis County

Honorable Gloria C. Reno

Filed: August 19, 2014

## I. INTRODUCTION

Plaintiffs Collin and Courtney Jefferson, by and through their natural father and next friend, Eric Jefferson, ("the Jeffersons") appeal the Circuit Court of St. Louis County's grant of summary judgment in favor of defendant Missouri Baptist Medical Center ("MBMC"). On appeal, the Jeffersons argue that the trial court erred by granting summary judgment in favor of

MBMC on the basis of section 538.210.2(3), R.S.Mo. (Cum Supp 2007). Specifically, they argue that the trial court incorrectly defined the term "employee" within the meaning of that section. We agree. We reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

## II. FACTS

Viewed in a light most favorable to the Jeffersons, the following facts led to the instant suit. Decedent Crystal Jefferson delivered her first child at age 31 on October 27, 2005, via caesarian section at MBMC. During her time in the hospital, she experienced abdominal pain and underwent a CT scan of the abdomen and pelvis. The CT scan showed a soft tissue mass in the abdomen as well as fluid collection in the pelvis. The attending radiologist recommended a follow-up study.

Ms. Jefferson underwent a follow-up CT scan at MBMC on December 9, 2005. This second scan also showed a soft tissue mass in the abdomen and fluid collection in the pelvis. Again, the attending radiologist recommended a follow-up study to address both the tissue mass and the fluid.

On January 19, 2006, Ms. Jefferson underwent a third CT scan at MBMC. Dr. Mosher, a radiologist, read and interpreted the results of the study and posted remarks to Ms. Jefferson's medical chart. Dr. Mosher informed Ms. Jefferson that the fluid collection had resolved, but failed to mention in her post-study report or to Ms. Jefferson that the soft tissue mass was still present. Accordingly, Ms. Jefferson believed her medical problem had been resolved.

In the spring of 2008, however, Ms. Jefferson began to notice an abnormal pressure in her abdomen. Testing soon revealed that the soft tissue mass was not only still present, but was in

2

fact stage-IV colon cancer. By this point, the tissue mass was inoperable. As a result, Ms. Jefferson died of cancer in 2011.

The Jeffersons filed the instant suit on December 15, 2011, alleging that Ms. Jefferson's cancer would have been treated two years earlier if Dr. Mosher had not negligently overlooked the soft tissue mass during the 2006 CT scan.[1] In response, MBMC filed a motion for summary judgment citing section 538.210.2(3), which bars the Jeffersons from recovering against MBMC for the tortious actions of Dr. Mosher if Dr. Mosher is not MBMC's "employee." MBMC asserted that Dr. Mosher was actually an employee of Midwest Radiological Associates,[2] which directly contracted with and paid Dr. Mosher, rather than its own employee. After a hearing, the trial court granted summary judgment in favor of MBMC. This appeal follows.

### III. STANDARD OF REVIEW

Our review of summary judgment is de novo. *Manner v. Schiermeier*, 393 S.W.3d 58, 61-62 (Mo. banc 2013). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We "review[] the record in a light most favorable to the party against whom judgment was entered, without deference to the trial court's findings, and accord[] the non-movant 'the benefit of all reasonable inferences from the record.'" *Manner*, 393 S.W.3d at 61-62 (quoting *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376). "Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Daugherty v. City of Maryland*

---

[1] The Jeffersons also named as defendants Midwest Radiological Associates and Dr. Mosher herself. These claims were resolved separately from the claim against MBMC now on appeal.

[2] Midwest Radiological Associates is a partnership of doctors affiliated with MBMC. According to the Jeffersons' reply to MBMC's motion for summary judgment, a radiologist is not permitted to practice at MBMC unless she is also a member of Midwest Radiological Associates.

3

*Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007). "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment."[3] *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. Additionally, "[s]tatutory interpretation is an issue of law that this Court reviews de novo." *Finnegan v. Old Republic Title Co. of St. Louis, Inc.*, 246 S.W.3d 928, 930 (Mo. banc 2008).

## IV. DISCUSSION

Section 538.210(3) bars the Jeffersons from recovering against MBMC for the tortious actions of Dr. Mosher, if Dr. Mosher is not MBMC's "employee."[4] The Jeffersons argue that the trial court's determination that Dr. Mosher was not MBMC's employee was based on an erroneous interpretation of the term "employee." Specifically, the Jeffersons contend that the term "employee," within the meaning of section 538.210.2(3), should be defined according to its dictionary definition and common-law principles of agency, which focus primarily on the level of control the employer exercises over the purported employee's work performance. Because MBMC exercised a significant degree of control over Dr. Mosher's work performance, the Jeffersons argue that the trial court erred by concluding as a matter of law that Dr. Mosher was not MBMC's employee, and that section 538.210.2(3) therefore barred their claim.

In response, MBMC argues that the trial court correctly defined the term "employee" in section 538.210.2(3) in accordance with the definition of "physician employee" provided in the definitions section of Chapter 538. Specifically, the legislature in section 538.205(9), R.S.Mo. (Cum. Supp. 2007), defines a "physician employee" as "any person or entity who works for hospitals for a salary or under contract and who is covered by a policy of insurance or self-

---

[3] The trial court failed to explain why it granted summary judgment. Therefore, we presume that the trial court did so based on the theory raised by MBMC in MBMC's motion for summary judgment. *See Cent. Mo. Elec. Co-op. v. Balke*, 119 S.W.3d 627, 635 (Mo. App. W.D. 2003).

[4] The parties agree that MBMC is not liable for Dr. Mosher's allegedly negligent acts if Dr. Mosher is not an "employee" of MBMC.

4

insurance by a hospital for acts performed at the direction or under control of the hospital." Because the undisputed facts show that Dr. Mosher does not meet this definition, MBMC contends that section 538.210.2(3) bars the Jeffersons' claim as a matter of law.

To resolve the foregoing dispute, we first address the reasons that the legislature's definition in section 538.205(9) of "physician employee" does not apply to section 538.210.2(3). Second, we define the term "employee" in section 538.210.2(3). Lastly, we remand to the trial court to apply the correct definition of the term "employee" in the context of section 538.210.2(3)

**A. Section 538.210.2(3)'s Statutory Bar and 538.205(9)'s Definition of "Physician Employee"**

In 2005, the legislature amended Chapter 538, entitled "Tort Actions Based on Improper Healthcare," by enacting the current section 538.210, entitled "Limitation on noneconomic damages—jury not to be informed of limit—limit—punitive damages, requirements." The basic purpose of section 538.210 is to limit wrongful-death claims against healthcare providers and their employees.[5] Section 538.210 accomplishes this purpose by two primary means. First, section 538.210.1 provides in pertinent part that in claims "arising out of the rendering of or the failure to render health care services, no plaintiff shall recover more than three hundred fifty thousand dollars for noneconomic damages." Second, section 538.210.2(3), the provision at issue

---

[5] Until recently, section 538.210.1 limited non-economic damages claims against healthcare providers and their employees for personal injury. However, in *Watts v. Lester Cox Medical Center*, 376 S.W.3d 633 (Mo. banc 2013), the Missouri Supreme Court held that section 538.210.1's cap on non-economic damages was unconstitutional as applied to personal-injury claims. The Jeffersons summarily argue that *Watts* also invalidates section 538.210.2(3), which is a statutory bar on healthcare providers' liability in wrongful-death claims based on the actions of non-employees. However, as MBMC correctly observes, *Watts* did not render section 538.210.2(3) unconstitutional. The Jeffersons fail to recognize that *Watts* only dealt with section 538.210.1's cap on non-economic damages. Additionally, only four months before *Watts* was decided, the Missouri Supreme Court in *Sanders v. Ahmed*, 364 S.W.3d 195, 204 (Mo. banc 2012), specifically upheld the constitutionality of section 538.210.1's cap on non-economic damages in regard to wrongful-death claims. *Cf. Mo. Roundtable for Life, Inc. v. State*, 396 S.W.3d 348, 353 (Mo. banc 2013) (explaining unconstitutional portion of statute may be severed to leave constitutional portion in effect).

here, instructs that "[n]o individual or entity whose liability is limited by the provisions of [Chapter 538] shall be liable to any plaintiff based on the actions or omissions of any other entity or person who is not an *employee* of such individual or entity." (emphasis added).

The legislature did not provide a specific definition for the term "employee" for the purposes of section 538.210.2(3). Therefore, MBMC directs our attention to Chapter 538's definitions section, which contains a definition for a different term: "physician employee." Section 538.205(9). Although section 538.205 is prefaced with, "[a]s used in sections 538.205 to 538.230, the following terms shall mean," the term "physician employee" appears nowhere in Chapter 538 besides the definitions section. *But see section* 538.210.1(1), R.S.Mo. (2000) (providing, prior to legislature's 2005 amendment of Chapter 538, that one category of defendant protected by the cap on non-economic damages is "[a] hospital . . . and its employees and *physician employees* who are insured under the hospital's professional liability insurance policy" (emphasis added)).[6]

Citing the principle of statutory construction that courts interpret statutes with the same or similar subject matter in pari materia, or by reference to one another, *see, e.g.*, *Lane v. Lensmeyer*, 158 S.W.3d 218, 226 (Mo. banc 2005), MBMC contends that we should look to section 538.205(9)'s definition of "physician employee" for the meaning of the term "employee" in section 538.210.2(3). Because the legislature's use of the term "employee" in section 538.210.2(3) is unambiguous, however, we decline to do so.

MBMC fails to acknowledge the basic rule that we "give effect to legislative intent as reflected in the plain language of the statute." *Gash v. Lafayette Cnty.*, 245 S.W.3d 229, 232 (Mo. 2008) (quoting *State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225 (Mo. banc 2007)).

---

[6] Prior to 2005, Chapter 538 did not contain a statutory bar to healthcare provider liability for the actions of employees akin to the present section 538.210.2(3).

6

We may look beyond the plain language of section 538.210.2(3)—and resort to extrinsic aids such as the principle that statutes should be read in pari materia—only if the statute is ambiguous. See *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 668-69 (Mo. banc 2010) ("[T]there is no need to refer to other . . . statutes where a statute's own language is clear."); 2B Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* section 51.1 (7th ed. 2008). "A statute is ambiguous when its plain language does not answer the current dispute as to its meaning." *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. banc 2009).

Here, section 538.210.2(3)'s plain language is clear. It provides that MBMC is not liable to the Jeffersons for the actions of Dr. Mosher if Dr. Mosher is not MBMC's "employee." Section 538.210.2(3). It is not ambiguous simply because MBMC has identified a different term—"physician employee"—within the definitions section of Chapter 538.[7] *See J.B. Vending Co., Inc. v. Dir. of Revenue*, 54 S.W.3d 183, 188 (Mo. banc. 2001) ("[T]he mere fact that the litigants disagree over the meaning of ["employee"] does not render the statute ambiguous."). "Indeed, the legislature's use of different terms . . . is presumed to be intentional and for a particular purpose," *Armco Steel v. Kansas City*, 883 S.W.2d 3, 7 (Mo. banc 1994), and we "cannot simply insert terms that the legislature has omitted" under the pretense of statutory construction, *Loren Cook Co. v. Dir. of Revenue*, 414 S.W.3d 451, 454 (Mo. banc 2013).[8]

---

[7] We of course recognize, however, that had the legislature specifically defined the term "employee," rather than "physician employee," in the definitions section of Chapter 538, we would be bound to apply that definition of "employee" to 538.210.2(3). *See State ex rel. Jackson v. Dolan*, 398 S.W.3d 472, 479 (Mo. banc 2013) ("[T]he lawmaking body's own construction of its language by means of definition of the terms employed should be followed in the interpretation of the statute to which it relates . . . ." (first alteration in original) (quoting *In re Hough's Estate*, 457 S.W.2d 687, 691 (Mo.1970))).

[8] Though not exactly on point, in *Cook v. Newman*, 142 S.W.3d 880, 892 (Mo. App. W.D. 2004) (en banc), the court was asked to determine whether the legislature's use of the term "employee" was intended to include "physicians" or "physician employees" within the meaning of a prior (and markedly different) version of section 538.210.2. The court observed that the legislature had specifically used the terms "physician employee" and "physician" in subsections 538.210.2(1) and 538.210.2(2), R.S.Mo. (2000), respectively, to describe two categories

Rather, we must presume that if the legislature had meant to use the term "physician employee" in section 538.210.2(3) in order to reference that term's definition in section 538.205(9), it would have done so. *See Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 5 (Mo. banc 2012) (explaining legislature would have used term "restaurants" in statute on food processing if it had meant to include restaurants); *Nelson v. Crane*, 187 S.W.3d 868, 870 (Mo. banc 2006) ("If the legislature intended for the terms 'committed' and 'detention' to have the same meaning, it could have utilized consistent terminology by using one term or the other."); *see also section* 104.010.1(21), R.S.Mo. (Cum. Supp. 2013) (providing special definition for term "employee" in statutes regarding state employee benefits); *accord* section 287.020.1, R.S.Mo. (Cum. Supp. 2013) (workers' compensation); section 36.152(2), R.S.Mo. (2000) (state executive branch personnel); section 56.805.8, R.S.Mo. (2000) (prosecuting and circuit attorneys' retirement system); section 50.1000(8), R.S.Mo. (Cum. Supp. 2007) (county employees' retirement system).

Because section 538.210.2(3) is unambiguous, we need not go beyond the plain and ordinary meaning of its language. See *Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. banc 1998). However, even if there was ambiguity, we note that the legislative history of section 538.210 reveals that the legislature deleted the term "physician employee" from section 538.210 when it amended the statute in 2005. *Compare section* 538.210, R.S.Mo. (2000), *with* section 538.210, R.S.Mo. (Cum. Supp. 2007). "[W]e are not to conclude that the legislature's deleting [this] significant term[] from [section 538.210] is meaningless." *Pettis v. Mo. Dep't of Corr.*, 275 S.W.3d 313, 319 (Mo. App. W.D. 2008). Rather, "[w]hen the legislature amends a statute, that

---

of defendants protected by the statute's cap on non-economic damages, but used only the term "employee" to describe a third category of defendants in the subsection at issue, section 538.210.2(3), R.S.Mo. (2000). *Cook*, 142 S.W.3d at 892. Therefore, the Court concluded that "[t]o construe the term 'employees' [in subsection 538.210.2(3)] . . . to include [physician employees or] physicians . . . would render as superfluous the use of the term 'employees' [in subsection 539.210.2(3)]." *Cook*, 142 S.W.3d at 892.

amendment is presumed to change the existing law." *Cox v. Dir. of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003). "[P]rovisions retained are regarded as a continuation of the former law, while those omitted are treated as repealed." *State ex rel. Klein v. Hughes*, 173 S.W.2d 877, 880 (Mo. 1943); *Peters v. Treasurer of Mo.*, 404 S.W.3d 322, 325 (Mo. App. E.D. 2012). Thus, we cannot simply "add [the] words ["physician employee"] to [the] statute under the auspice of statutory construction." *Sw. Bell Yellow Pages, Inc. v. Dir. Of Revenue*, 94 S.W.3d 388, 390 (Mo. banc 2002); see *Comm. for Educ. Equal. v. State*, 294 S.W.3d 477, 488 (Mo. banc 2009) ("Legislative acts are entitled to deference, and this Court must give these acts any reasonable construction to avoid nullifying them.").

Rather, we adhere to the plain language of section 538.210.2(3), because "[t]he legislature is presumed to have intended what the law states directly," *Metro Auto Auction*, 707 S.W.2d at 404, and courts should "give effect to statutes as they are written," *McDermott*, 934 S.W.2d at 287. The plain language of section 538.210.2(3) provides that the Jeffersons' suit is barred only if Dr. Mosher is not MBMC's "employee." Therefore, we do not interpret the term "employee" in section 538.210.2(3) to mean a "physician employee" as defined in section 538.205(9).

**B. The Definition of the Term "Employee" in Section 538.210.2(3)**

As we have explained, section 538.210.2(3) bars the Jeffersons' claim if Dr. Mosher is not MBMC's "employee." Because the legislature provided no definition of the term "employee" for the purposes of section 538.210.2(3), we must define that term here. We first address why the Jeffersons are correct that the term "employee" should be defined according to common-law principles of agency and discuss how those principles are applied. Second, we address MBMC's

9

misapprehension that the legislature's use of the term "employee" precludes reference to the law of agency.

It is a familiar rule of construction that "[w]here a statute uses words that have a definite and well-known meaning at common law, it will be presumed that the terms are used in the sense in which they were understood at common law . . . ." *State ex rel. Auto Owners Ins. Co. v. Messina*, 331 S.W.3d 662, 665 (Mo. banc 2011) (quoting *Belcher v. State*, 299 S.W.3d 294, 296 (Mo. banc 2009)). The Restatement (Third) of Agency defines the term "employee" as "an agent whose principal *controls or has the right to control* the manner and means of the agent's performance of work." Restatement (Third) of Agency section 7.07(3)(a) (emphasis added) (referencing respondeat superior); *accord* Restatement (Second) of Agency section 220(1) (1958) ("A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's *control or right to control*." (emphasis added)); *cf.* Restatement (Third) of Agency: Intro. (2006) ("The subject matter of this Restatement [is] the common law of agency . . . .").

Missouri courts also frequently observe that "[a]bsent a statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary." *Balloons Over the Rainbow, Inc. v. Dir. of Revenue*, 427 S.W.3d 815, 825 (Mo. banc 2014) (quoting *Am. Healthcare Mgmt., Inc. v. Dir. of Revenue*, 984 S.W.2d 496, 498 (Mo. banc 1999)). Black's Law Dictionary defines the term "employee" as "[a] person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." *Black's Law Dictionary* 602 (9th ed. 2009). Thus, the dictionary definition of "employee" is consistent with the Restatement in its emphasis on the employer's right to control.

This focus on the principal's right to control is consistent with other areas of Missouri law where a test for the presence of an employment relationship is germane. Regarding employment security for instance, the legislature provided in section 288.034(5), R.S.Mo. (Cum. Supp. 2011), that the question of whether an individual is an employee, as opposed to a non-employee independent contractor, should be determined according to "the common law of agency right to control." Likewise, in the context of common-law tort liability, Missouri courts have continually used the extent of the principal's control over the agent's work performance as a measure of whether an employment relationship exists. *See Sakabu v. Regency Constr. Co.*, 392 S.W.3d 494, 498 (Mo. App. E.D. 2012) ("Employees and independent contractors are distinguished primarily on the basis of the amount of control the alleged employer has over them."); *Bargfrede v. Am. Income Life Ins. Co.*, 21 S.W.3d 157, 162 (Mo. App. W.D. 2000) (distinguishing independent contractor from employee based on the employer's "right or power to control and direct the physical conduct of the [employee or agent] in the performance of the act"); *Scott v. SSM Healthcare St. Louis*, 70 S.W.3d 560, 566-67 (Mo. App. E.D. 2002) ("In the context of a hospital-physician relationship, the primary focus is on whether the hospital generally controlled, or had the right to control, the conduct of the doctor in his work performed at the hospital."); *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 562 (Mo. App. W.D. 1999) (same); *Carter v. Wright*, 949 S.W.2d 157, 158 (Mo. App. W.D. 1997) (same).

Both the Restatement and Missouri case law provide guidelines for determining whether a sufficient degree of control exists for the establishment of an employment relationship. The Restatement (Third) of Agency counsels that numerous "factual indicia" are relevant to determining whether an agent who does work at the behest of a principal is an "employee," including:

11

[1] the extent of control that the agent and the principal have agreed the principal may exercise over details of the work [and the extent of control exercised in practice]; [2] whether the agent is engaged in a distinct occupation or business; [3] whether the type of work done by the agent is customarily done under a principal's direction or without supervision; [4] the skill required in the agent's occupation; [5] whether the agent or the principal supplies the tools and other instrumentalities required for the work and the place in which to perform it; [6] the length of time during which the agent is engaged by a principal; [7] whether the agent is paid by the job or by the time worked; [8] whether the agent's work is part of the principal's regular business; [9] whether the principal and the agent believe that they are creating an employment relationship; [10] and whether the principal is or is not in business.

Restatement (Third) of Agency section 7.07 cmt. f; *cf.* Restatement (Third) of Agency section 7.07 rep. n. f ("[Some s]tatutes . . . explicitly adopt the common-law test articulated in this section to determine whether a person should be characterized as an employee for purposes of the statute . . . . Many cases apply the specific criteria mentioned in the Comment . . . ."). Likewise, prior Missouri courts have adopted the equivalent list of criteria from the 1958 version of the Restatement of Agency to help identify an employer-employee or master-servant relationship.[9] These factors include:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relationship of master and servant; and (j) whether the principal is or is not in business.[10]

---

[9] In this context, the master-servant relationship is synonymous with the employer-employee relationship. *See* Restatement (Second) of Agency section 220 cmt. g (1958) ("[I]n statutes dealing with various aspects of the relation between the [master and servant], the word 'employee' has largely displaced 'servant.' In general, this word is synonymous with servant."); *Bargfrede*, 21 S.W.3d at 161 n.5 (noting interchangeable use of terms "servant" and "employee").

[10] Because the factors stated in the Restatement (Third) and the Restatement (Second) are substantially consistent, we need not endorse one over the other. Rather, we view the list in the Restatement (Third) simply as a more recent iteration of the same basic principle explained in the earlier version.

*Lee v. Pulitzer Publ'g Co.*, 81 S.W.3d 625, 631 (Mo. App. E.D. 2002) (quoting Restatement (Second) of Agency section 220(2) (1958)); *Sakabu*, 392 S.W.3d at 498 (same); *Keller v. Mo. Baptist Hosp.*, 800 S.W.2d 35, 38 (Mo. App. E.D. 1990) (same). No single Restatement factor is dispositive. Restatement (Second) of Agency section 220 cmt. c (1958).

In applying the foregoing Restatement factors, the central rule is that the more control the principal may exercise over the agent, the more likely the agent is an employee. *Bargfrede*, 21 S.W.3d at 162; *see also Scott*, 70 S.W.3d at 566-67 ("In the context of a hospital-physician relationship, the primary focus is on whether the hospital generally controlled, or had the right to control, the conduct of the doctor in his work performed at the hospital."). However, it is not a matter of "whether [the principal] actually exercised control over the work . . . [but a matter of] whether [the principal] had the right to exercise that control." *Bargfrede*, 21 S.W.3d at 162 (second alteration in original) (quoting *Carter v. Wright*, 949 S.W.2d 157, 160 (Mo. App. W.D. 1997)).

As to each of the individual Restatement factors, we observe that the following facts would indicate that an employment relationship does exist:

> [1] an agreement for close supervision or de facto close supervision of the [agent's] work; [2] work which does not require the services of one highly educated or skilled; [3] the supplying of tools by the [principal]; [4] payment by hour or month; [5] [working] over a considerable period of time with regular hours; [6] full time [work for one principal]; [7] [work] in a specific area or over a fixed route; [8] the fact that the work is part of the regular business of the [principal]; [9] the fact that the community regards those doing such work as [employees]; [10] the belief by the parties that there is a [employer] and [employee] relation; [11] an agreement that the work cannot be delegated.

Restatement (Second) of Agency section 220 cmt. h (1958).

Furthermore, an employer's right to control may be attenuated, and an employee may have a significant degree of discretion in her work.[11] Restatement (Third) of Agency section 7.07 cmt. f. Importantly here, "Missouri courts have long recognized that physicians must be free to exercise independent medical judgment." *Scott*, 70 S.W.3d at 568. "The mere fact that a physician retains such independent judgment will not preclude a court, in an otherwise proper case, from finding the existence of an employer-employee . . . relationship between a hospital and physician." *Id.* A physician should not be deemed a non-employee agent "merely because the hospital does not have the right to stand over the [physician's] shoulder and dictate to him or her how to diagnose and treat patients." *Id.*

Despite the foregoing authority, MBMC contends that we may not reference "the common law of agency," because the terms "agent" and "employee" are not synonymous. While it is true that these terms are not synonymous, MBMC misapprehends the import of this fact.

An employee is a subset of agent distinguished by the principal's right to control the details of the employee's work performance. *See* Restatement (Third) of Agency section 7.07 cmt. f (2006) (An "agent[ is] . . . not [an] employee[] [if she] retain[s] the right to control how [she] perform[s her] work."). In particular, this distinction gains significance in light of the different theories of principal-agent liability, e.g., direct or vicarious, applicable to non-employee agents and employee agents respectively. *See* Restatement (Third) of Agency section 703, 703

---

[11] The Restatement (Third) of Agency provides the following example of an attenuated employment relationship:

> A, the CEO of P Corporation, exercises general managerial authority over its operations. P Corporation's directors, concerned that A's impaired vision makes it unsafe for A to drive, direct A to use a driver and car to be furnished by P Corporation when A travels by car on business. P Corporation's directors have the right so to direct A. A is an employee of P Corporation for this purpose.

Restatement (Third) of Agency § 7.07 cmt. f, illus. 15 (2006); *see also Keller v. Mo. Baptist Hosp. of Sullivan*, 800 S.W.2d 35, 38 (Mo. App. E.D. 1990) ("In some types of cases which involve persons customarily considered as servants, there may even be an understanding that the employer shall not exercise control." (quoting Restatement (Second) of Agency section 220 cmt. d (1958))).

14

cmt b. (2006) (noting generally that "direct liability [for, inter alia, a non-employee agent's conduct] requires fault on the part of the principal whereas vicarious liability [for, inter alia, an employee agent's conduct] does not require that the principal be at fault"). Therefore, as MBMC suggests, it is reasonable to conclude that when the legislature used the term "employee" in section 538.210.2(3), it did not mean to include all individuals who might be classified as "agents" in the broadest sense of that term.

Contrary to MBMC's contention, however, the legislature's failure to use the terms "agent" or "agency" in section 538.210.2(3) does not indicate that it intended to ban all reference to "the common law of agency" in determining whether an employment relationship exists. Missouri courts have long referred to the Restatement of Agency when asked to determine whether an employment relationship exists. *See, e.g.*, *Barnes v. Real Silk Hosiery Mills*, 108 S.W.2d 58, 61-62 (Mo. 1937). In fact, they often use the words "agent" and "employee" interchangeably in that context. *See, e.g.*, *Scott*, 70 S.W.3d 560, 566-67 (using term "agent" in place of "employee" or "servant" in context of respondeat superior, but affirming that "the primary focus is on whether the hospital generally controlled, or had the right to control, the conduct of the doctor in his work performed at the hospital."); *see also Parshall v. Buetzer*, 195 S.W.3d 515, 519 n.5 (Mo. App. W.D. 2006) (discussing "potentially misleading assertion in Missouri case law" regarding use of term "agent"). Thus, the technical distinction between an "agent" and an "employee" is of relatively minor significance here, and the question of whether Dr. Mosher is MBMC's "employee" within the meaning of section 538.210.2(3) should be determined by reference to common-law principles of agency.

15

# V. CONCLUSION

The trial court erred as a matter of law when it determined section 538.210.2(3) barred the Jeffersons' claim because Dr. Mosher did not meet section 538.205(9)'s definition of "physician employee." We reverse the trial court's grant of summary judgment. We remand to the trial court with instructions to apply, in further proceedings, the definition of the term "employee" in section 538.210.2(3) in a manner consistent with this opinion.

_____
Lisa S. Van Amburg, Presiding Judge

Patricia L. Cohen.J., and
Philip M. Hess, J., concur.