In the
 Missouri Court of Appeals
 Western District

 
 LISA WILSON, 
 
 Appellant,  WD83784
 v.  OPINION FILED:
 
 ATTORNEY GENERAL AND  MARCH 9, 2021
 COMMISSIONER OF 
 ADMINISTRATION, 
 
 Respondents. 

 Appeal from the Circuit Court of Cole County, Missouri
 The Honorable Patricia S. Joyce, Judge

 Before Division Three: Karen King Mitchell, Presiding Judge, Gary D. Witt, Judge,
 Anthony Rex Gabbert, Judge

 Lisa Wilson appeals the judgment of the Cole County Circuit Court granting summary

judgment against her in her declaratory judgment action. She complains in three points on appeal

that the Bi-State Development Agency of the Missouri-Illinois Metropolitan District is an agency

of the State of Missouri, that she complied with the State Legal Expense Fund statutory

requirements, and that she is entitled to summary judgment. The judgment is affirmed.

 Facts

 In November 2014, Lesley Lively was walking to the Union Station Metrolink Station. He

was a deaf, 63-old male. Lively descended the steep stairs from Clark Ave. when, without warning,
he was struck by a westbound Metrolink train. He died from his injuries later that same day. Paul

Flernoy was the operator of the Metrolink light-rail train that struck Lively.

 Lively’s daughter, Lisa Wilson, brought a wrongful death action against the Bi-State

Development Agency of the Missouri-Illinois Metropolitan District, d/b/a Metrolink (“Bi-State”)

and Paul Flernoy in the Circuit Court of the City of St. Louis1 in February 2016. The court entered

judgment on December 5, 2017 finding: Flernoy was acting as an employee of Metrolink as the

operator of the train; Metrolink is a “public entity” under section 537.6002 and as such Metrolink

is a state agency entitled to funds from the Missouri State Legal Expense Funds (“SLEF”);

Metrolink is a state agency and Flernoy is an employee of a state agency under section 105.711.

The court further found that Flernoy was negligent because he failed to keep a proper lookout;

failed to operate the train within the designated speed limit for the stretch of track; ran the train at

a rate of speed that was excessive under the conditions; failed to slow, decelerate, or stop the train

to avoid an imminent collision; and operated the train while he was under the influence of

marijuana that impaired his judgment. It found that Flernoy’s negligence directly caused Lively’s

injuries and entered judgment against Flernoy and for Wilson in the amount of $2,000,000.

 Also on December 5, 2017, Wilson filed a petition for approval of a wrongful death

settlement. Her petition stated in relevant part: Wilson negotiated a settlement with Bi-State for a

sum set forth in the exhibit attached to the petition. Bi-State’s agreement to settle was contingent

on Flernoy’s separate and independent decision on whether or not to accept the terms of the

settlement offer that was directed to him, individually, by Wilson. The agreement between Flernoy

 1
 The wrongful death action was case number 1622-CC00349.
 2
 Statutory references are RSMo 2016 unless otherwise indicated.

 2
and Wilson is set forth in a separate agreement (“the 537.065 Agreement”). Flernoy retained his

own separate counsel for the purpose of reviewing, considering, and negotiating the 537.065

Agreement that was presented by Wilson. Flernoy agreed to the terms of the settlement and

executed the 537.065 Agreement. The petition further provided:

 Plaintiff understands and agrees that even if no judgment is awarded in her favor
 against Flernoy pursuant to the 537.065 Agreement, she shall nevertheless have no
 further claim of any kind, arising from the Incident, against Bi-State, Flernoy or
 any of the Released Parties … as Plaintiff has released and forever discharged all
 such claims.

 Plaintiff understands and agrees that, if a judgment is awarded in her favor against
 Defendant Flernoy pursuant to the 537.065 Agreement, she may not attempt to
 execute that judgment against Bi-State or any of the Released Parties, as Plaintiff
 has released and forever discharged all such claims.

 Plaintiff understands and agrees that, if a judgment is awarded in her favor against
 Flernoy pursuant to the 537.065 Agreement, Plaintiff may attempt to execute that
 judgment only, solely and exclusively, against the State Legal Expense Fund
 established by RSMo section 105.711.

 Plaintiff understands and agrees that, if a judgment is awarded in her favor against
 Flernoy pursuant to the 537.065 Agreement, and if the State Legal Expense Fund
 refuses to satisfy any or all of said judgment, and/or if a Court of competent
 jurisdiction determines that the State Legal Expense Fund is not liable to pay any
 of said judgment, Plaintiff shall nevertheless have no further claim of any kind,
 arising from the Incident, against Bi-State, Flernoy or any of the Released Parties
 as Plaintiff has released and forever discharged all such claims.

The court entered its order approving the wrongful death settlement according to the above terms

on December 8, 2017.

 On January 15, 2018, Wilson filed a receipt that she received the settlement sum identified

in Exhibit A of the wrongful death settlement “as full and complete settlement of all claims by

Plaintiff against Defendant Bi-State Development Agency only.…” She also filed a satisfaction

of settlement “as to Plaintiff’s claims against Defendant Bi-State Development Agency only.”

 3
Wilson dismissed her claims against Bi-State with prejudice. The court entered its order of

dismissal on January 16, 2018.

 On April 20, 2018, Wilson filed a petition for declaratory relief in the Circuit Court of the

City of St. Louis.3 The named defendants were the State of Missouri, ex. Rel Attorney General

and Commissioner of Administration (“the State of Missouri”). Wilson sought a declaration that

Flernoy is an employee of a state agency under the SLEF and that a valid judgment against an

employee of a state agency must be paid out of the SLEF. Wilson relied on section 105.711.2:

“Moneys in the state legal expense fund shall be available for the payment of any claim or any

amount required by any final judgment rendered by a court of competent jurisdiction…”

(emphasis added). A dispute arose between the parties as to whether funds from the SLEF can

satisfy the judgment against Flernoy. The parties further disputed whether Flernoy was required

to provide notice to the Attorney General regarding the suit and whether Paul Flernoy is an

employee of a state agency under section 105.711.

 The case was transferred to the Cole County Circuit Court on September 13, 2018. 4 On

April 12, 2019, Wilson filed a motion for summary judgment. The Attorney General and

Commissioner of Administration filed a motion for summary judgment on October 7, 2019. The

court entered summary judgment in favor of the State of Missouri on April 8, 2020. It found the

following: Section 105.711.2(2) provides in relevant part that “[T]he state legal expense fund shall

be available for the payment of any claim or any amount required by any final judgment rendered

by a court of competent jurisdiction against … [a]ny officer or employee of the State of Missouri

 3
 Case number 1822-CC00801.
 4
 Once in Cole County, the case became case number 18AC-CC00391.

 4
or any agency of the state….” Bi-State is not an “agency of the state” of Missouri within the

meaning of section 105.711.2(2) and thus, as a matter of law, the SLEF is not available to satisfy

Wilson’s judgment. The court found that Bi-State is instead an “interstate compact entity.”

 This appeal follows.

 Standard of Review

 “Our review of summary judgment is de novo.” Jefferson ex rel. Jefferson v. Missouri

Baptist Med. Ctr., 447 S.W.3d 701, 705 (Mo. App. E.D. 2014). “As the trial court’s judgment is

founded on the record submitted and the law, an appellate court need not defer to the trial court’s

order granting summary judgment.” Id. (internal quotation marks omitted). “Additionally,

[s]tatutory interpretation is an issue of law that this Court reviews de novo.” Id. (internal quotation

marks omitted).

 Point I

 In her first point on appeal, Wilson claims the trial court erred in finding Bi-State is not an

agency of the state. She states the statutes and bi-state compact creating Bi-State show that it is

controlled by and answerable to the state of Missouri and qualifies as an agency of the state,

Flernoy was an employee of Bi-State, and Wilson’s judgment was for conduct that arose out of

and was performed in connection with Flernoy’s official duties on behalf of Bi-State. Wilson

concludes that Bi-State is properly considered an agency of the state for purposes of section

105.711.

 State Legal Expense Fund

 Section 105.711 established the SLEF and provides in relevant part:

 1. There is hereby created a “State Legal Expense Fund” which shall consist of
 moneys appropriated to the fund by the general assembly and moneys otherwise
 credited to such fund pursuant to section 105.716.

 5
 2. Moneys in the state legal expense fund shall be available for the payment of any
 claim or any amount required by any final judgment rendered by a court of
 competent jurisdiction against:
 (1) The State of Missouri, or any agency of the state, pursuant to section 536.050
 or 536.087 or section 537.600;
 (2) Any officer or employee of the State of Missouri or any agency of the state,
 including, without limitation, elected officials, appointees, members of state boards
 or commissions, and members of the Missouri National Guard upon conduct of
 such officer or employee arising out of and performed in connection with his or her
 official duties on behalf of the state, or any agency of the state, provided that
 moneys in this fund shall not be available for payment of claims made under chapter
 287;
 …
 5. All payments shall be made from the state legal expense fund by the
 commissioner of administration with the approval of the attorney general. … In
 the case of any claim or judgment against an officer or employee of the state or any
 agency of the state based upon conduct of such officer or employee arising out of
 and performed in connection with his or her official duties on behalf of the state or
 any agency of the state that would give rise to a cause of action under section
 537.600, the state legal expense fund shall be liable, excluding punitive damages,
 for:
 (1) Economic damages to any one claimant; and
 (2) Up to three hundred fifty thousand dollars for noneconomic damages.
 The state legal expense fund shall be the exclusive remedy and shall preclude any
 other civil actions or proceedings for money damages arising out of or relating to
 the same subject matter against the state officer or employee, or the officer’s or
 employee’s estate. No officer or employee of the state or any agency of the state
 shall be individually liable in his or her personal capacity for conduct of such officer
 or employee arising out of and performed in connection with his or her official
 duties on behalf of the state or any agency of the state.

“The General Assembly created the SLEF in 1983.” Laughlin v. Perry, 604 S.W.3d 621, 632 (Mo.

banc 2020). “The fundamental purpose of the SLEF is to protect the covered employees from the

burden and expense of civil litigation relating to the performance of their duties.” Id. (internal

quotation marks omitted). “The purposes are apparent.” Id. (internal quotation marks omitted).

“A competent employee, who is in demand elsewhere, may be unwilling to work for the state

without protection.” Id. (internal quotation marks omitted). “Those who do serve may be

unwilling to take necessary risks for fear of litigation.” Id. (internal quotation marks omitted).

 6
 Smith v. State

 In Smith v. State, 152 S.W.3d 275 (Mo. banc 2005), the Missouri Supreme Court held that

members of the St. Louis Board of Police Commissioners, and officers of the St. Louis Police

Department, were officers or employees of an “agency of the state,” entitled to coverage under the

SLEF. The Court held that “[t]he statutory framework governing the St. Louis Police Board”

mandated the conclusion that it was an “agency of the state, …. as opposed to a local or municipal

agency.” Id. at 278. (internal quotation marks omitted). In reaching its conclusion, the Court

emphasized the following features of the St. Louis Police Board:

 The members of the Board, other than the mayor of St. Louis ex-officio, are
 appointed by the governor with the advice and consent of the senate, and they
 receive their commissions from the governor. It is also the governor who is
 authorized by statute to remove any commissioner for misconduct in office. In
 addition, the general assembly has imposed upon the Board numerous requirements
 pertaining to the Board’s duty to establish and employ a “permanent police force,”
 including those that establish the qualifications of police officers, the number of
 police officers of each rank that the Board may employ, and the maximum amount
 that officers of each rank can be paid. Further, the Board is required to make its
 records available for inspection by the general assembly or any committee thereof.
 In all these respects, the Police Board is answerable to the state rather than the City.

 In fact, the general assembly has expressly prohibited the City of St. Louis and its
 officials from presuming to exercise authority or control over the Board or the
 Police Department.

Id. (internal citations omitted). The Missouri Supreme Court also recognized the existence of

caselaw “consistently recogniz[ing]” the Police Board as a state agency in other contexts. Id. at

278-79. “[B]ased on a structural analysis of the statutes creating the Board and analogies to case

law holding that the Board is an agency of the state in other contexts,” the Supreme Court held

that the St. Louis Board of Police Commissioners is an “agency of the state” subject to SLEF

coverage. Id. at 279.

 In response, the Missouri legislature amended section 105.726.3 in 2005 to read as follows:

 7
 3. Moneys in the state legal expense fund shall not be available for the payment of
 any claim or any amount required by any final judgment rendered by a court of
 competent jurisdiction against a board of police commissioners established under
 chapter 84, RSMo, including the commissioners, any police officer,
 notwithstanding sections 84.330 and 84.710, RSMo, or other provisions of law,
 other employees, agents, representative, or any other individual or entity acting or
 purporting to act on its or their behalf. Such was the intent of the general assembly
 in the original enactment of sections 105.711 to 105.726, and it is made express by
 this section in light of the decision in Wayman Smith, III, et al. v. State of Missouri,
 152 S.W.3d 275. Except that the commissioner of administration shall reimburse
 from the legal expense fund any board of police commissioners established under
 chapter 84, RSMo, for liability claims otherwise eligible for payment under section
 105.711 paid by such boards on an equal share basis per claim up to a maximum of
 one million dollars per fiscal year.

The same 2005 legislation also added a sentence to section 105.726.1, rejecting Smith’s holding

that the SLEF statutes had the effect of waiving the State’s own sovereign immunity. See 152

S.W.3d at 280.

 In S.M.H. v. Schmitt, WD 83050, 2020 WL 3244095, at *2–12 (Mo. App. W.D. June 16,

2020), this court recently examined the meaning of the legislature’s reaction to Smith.5

 Although the General Assembly overruled the specific result in the Smith case,
 and Smith’s holding that the Legal Expense Fund statutes waive the sovereign
 immunity of the State, we do not believe that the legislature thereby rejected the
 Supreme Court’s “structural analysis” of the statutes creating a particular
 governmental entity, or the Court’s emphasis on the level of State control over a
 particular agency, to determine whether an entity is an “agency of the state” for
 purposes of Legal Expense Fund coverage.

Id. at *4. We observed that two cases decided after the legislature’s reaction to Smith still applied

the Smith framework in deciding whether other public entities were a state agency under the SLEF.

Id. (citing P.L.S. ex rel. Shelton v. Koster, 360 S.W.3d 805, 817 (Mo. App. W.D. 2011) (“We

disagree with Plaintiff, however, that the state’s relationship to the Board of Police Commissioners

 5
 S.M.H. was transferred to the Missouri Supreme Court on November 3, 2020. The Supreme Court opinion
has not been handed down as of the time of this writing.

 8
of St. Louis[, at issue in Smith,] is comparable to the state’s relationship to its school

districts.”); Pub. Sch. Retirement Sys. Of Mo. v. State Street Bank & Trust Co., 640 F.3d 821, 832

(8th Cir. 2011) (Missouri law; relying on Smith in determining whether state retirement systems

would be considered “agencies of the state” for purposes of Legal Expense Fund coverage)). This

court determined in S.M.H. that “[u]nder Article V, § 2 of the Missouri Constitution, we are bound

to follow the Smith analysis until that decision is modified or overruled by the Supreme Court or

by express legislative action.” Id. (internal quotation marks omitted). The same is true for us in

the current case.

 Bi-State

 “In 1949, Missouri and Illinois entered into an agreement to create [Bi-State] as an

interstate compact entity.” Moore v. Bi-State Dev. Agency, 609 S.W.3d 693, 695 (Mo. banc 2020)

(citing section 70.3706). Bi-State “was created to plan, construct, own, operate and maintain

bridges, airports and terminals and to coordinate streets, highways, parking areas, water supply,

and sewage and disposal works, recreational and conservation facilities and projects.” Id. (internal

quotation marks omitted). Bi-State’s “purpose is to provide a unified mass transportation system

which, by reducing duplication, would halt or stem the deterioration of mass transportation and

enable the unified system to operate at a profit rather than at a loss.” Id. (internal quotation marks

omitted). “The United States Congress approved the interstate compact as required by the

United States Constitution’s Compact Clause, article I, section 10, clause 3.” Id.

 “Because [Bi-State] is an interstate compact entity, created by Missouri and another state,

and the United States Congress approved the compact, it is considered a public entity for purposes

 6
 Section 70.370 was amended effective August 28, 2020. The changes were not substantive and do not
impact this appeal.

 9
of sovereign immunity.” Id. (citing section 537.600.3). “Accordingly, [Bi-State] retains its

sovereign immunity for negligent acts in certain circumstances.” Id. (citing section 537.600.1).

“However, its sovereign immunity is waived when there are injuries ‘directly resulting from the

negligent acts ... by public employees arising out of the operation of motor vehicles ... within the

course of their employment....’” Id. (quoting section 537.600.1(1)).

 The interstate compact creating Bi-State treats it as a unique entity that is not an agency of

the State of Missouri. Article II of the compact created the “district to be known as the ‘Bi-State

Metropolitan Development District’” that embraces the City of St. Louis, the Missouri counties of

St. Louis, St. Charles, Jefferson, and Franklin, and the Illinois counties of Madison, St. Clair, and

Monroe. Section 70.370. Article III of the compact created “The Bi-State Development Agency

of the Missouri-Illinois Metropolitan District.” Section 70.370. Article III provides that the Bi-

State Development Agency “shall be a body corporate and politic.” Section 70.370.

 This language has been interpreted as rendering Bi-State “a municipal corporation subject

to suit under section 1983.” Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp., 948 F.2d

1084, 1087 (8th Cir. 1991). Further, the United States Constitution’s Eleventh Amendment

protection affording states and arms of the state immunity in federal court does not apply to Bi-

State. U.S. ex rel. Fields v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist., 872 F.3d 872,

876 (8th Cir. 2017).

 Missouri and Illinois each appoint five (half) of the ten commissioners of Bi-State. Section

70.370, art. IV. The Missouri-appointed commissioners lack authority to take any binding action

unless a majority of the Illinois-appointed commissioners also vote in favor of the action. Section

70.370, art. V. Plans for the development of the Bi-State metropolitan district must be approved

by the Illinois legislature in addition to the Missouri legislature. Section 70.370, art. III.

 10
 The Missouri Transportation Corporation Act is found in sections 238.300 through

238.367. It defines the term “local transportation authority” as “a county, city, town, village,

county highway commission, special road district, interstate compact agency, or any local public

authority or political subdivision having jurisdiction over any bridge, street, highway, dock, wharf,

ferry, lake or river port, airport, railroad, light rail or other transit improvement or service.” Section

238.302(4) (emphasis added). State agencies are not included in that definition; instead, this is a

list of local entities or political subdivisions and Bi-State is included among them.7 The term

“agency of the state” as used in section 105.711, establishing the SLEF, does not include political

subdivisions. Shelton, 360 S.W.3d at 814-15; 819 (noting that “if section 105.711 (the [SLEF]

statute) had been intended to cover all public entities having employees, we would expect it, like

537.600 and 537.700, to use the broad terms ‘public entities’ and ‘public employees.’”).

 Section 34.030.18 states that the “commissioner of administration shall purchase all

supplies for all departments of the state, except as in this chapter otherwise provided. The

commissioner of administration shall negotiate all leases and purchase all lands, except for such

departments as derive their power to acquire lands from the constitution of the state.” “The

term ‘department’ as used in this chapter shall be deemed to mean department, office, board,

commission, bureau, institution, or any other agency of the state, except the legislative and judicial

 7
 We also note that section 70.375 states:

 All property, real and personal, owned or held by the bi-state development agency, and all interest
 income derived from any notes, bonds or other instruments in writing issued by the bi-state
 development agency, shall possess the same status, with respect to taxation in the state of Missouri,
 as is now or may hereafter be possessed by property, real and personal, owned or held by cities
 within said state of Missouri, and by the interest income derived from notes, bonds or other
 instruments in writing issued by such cities.
 8
 Section 34.030 was amended effective August 28, 2017. The changes do not impact this appeal.

 11
departments. The term department shall not include public institutions of higher education.”

Section 34.010(1)9 (emphasis added). If Bi-State were an agency of the state, the commissioner

of administration would lease and purchase its real estate and Bi-State would not have the power

to do so. Instead, Bi-State has broad powers to lease and purchase real estate. Section 70.373.

 “Missouri and Illinois are not compelled to fund Bi–State. Significantly, nothing obligates

Missouri and Illinois to satisfy Bi–State’s liabilities and obligations.” Barket, 948 F.2d at 1088.

The interstate compact does not require the State of Missouri to appropriate money for Bi-State.

See section 70.370. “The compact creating Bi–State makes no specific provision for state funding

of Bi–State, but authorizes several methods for Bi–State to generate operating revenue.” Fields,

872 F.3d at 880 (internal quotation marks omitted).

 Bi–State can charge and collect fees for use of the facilities owned and operated by
 it, can receive for its lawful activities any contributions or moneys appropriated by
 municipalities, counties, state or other political subdivisions or agencies; or by the
 federal government or any agency or officer thereof, and can issue bonds upon the
 security of the revenues to be derived from [its] facilities; and, or upon any property
 held or to be held by it.

Id. (internal quotation marks omitted) (citing section 70.370, art. III). Between 2009 and 2014—

the year of the train accident that killed Lively and resulted in the judgment Wilson sought to

collect through the current declaratory judgment action— the states of Missouri and Illinois

combined contributed only 1.3 percent of the funding of Bi-State. Id. at 881. Bi-State’s reliance

on the State of Missouri for funding is minimal.

 9
 Section 70.010 was amended effective August 28, 2020. The only substantive change was the addition of
“The term department shall not include public institutions of higher education” to subsection 1. This does not impact
this appeal.

 12
 We find that Bi-State is not an “agency of the state” of Missouri pursuant to section

105.711.2(2). The SLEF is not available to satisfy Wilson’s judgment against Bi-State. The point

is denied.

 Points II and III

 In her second point on appeal, Wilson claims the trial court erred because Flernoy complied

with the cooperation clause of section 105.716 and the undisputed material facts do not show Bi-

State is entitled to judgment as a matter of law. She states that Bi-State was assigned to the

department of transportation by the Missouri legislature. Wilson concludes that section 105.716

provides an exception for claims against employees of the department of transportation, the

investigation, defense, negotiation, or compromise of the claim against Flernoy was conducted by

legal counsel provided by Bi-State, and Flernoy cooperated in all respects with legal counsel

provided by Bi-State.

 In her third point on appeal, Wilson claims the trial court erred in finding that Bi-State is

not an agency of the state. She states that the statutes and bi-state compact creating Bi-State show

that it is controlled by and answerable to the state of Missouri and qualifies as an agency of the

state, Flernoy was an employee of Bi-State, Wilson’s judgment was for conduct that arose out of

and was performed in connection with Flernoy’s official duties on behalf of Bi-State, the

investigation, defense, negotiation, or compromise of the claim against Flernoy was conducted by

legal counsel provided by Bi-State, and Flernoy cooperated in all respects with legal counsel

provided by Bi-State. Wilson concludes that she is entitled to summary judgment.

 Both of these points require that Bi-State be an agency of the state under section 105.711.

Given our disposition of Point I, we need not address these points.

 Conclusion

 13
 The trial court did not err in finding that Bi-State is not an agency of the state under section

105.711 and entering summary judgment in favor of the Attorney General and Commissioner of

Administration. The judgment is affirmed.

 Anthony Rex Gabbert, Judge

All concur.

 14